**SECURITIES & EXCHANGE COMMISSION, Plaintiff–Appellee,**

v.

**Joseph C. FOX, David L. Ball, and Patricia J. Randall,
Defendants–Appellants.**

No. 87–1526.

United States Court of Appeals,
Fifth Circuit.

Sept. 21, 1988.

**248**

James L. Truitt, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for Ball and Randall.

Elizabeth P. Sturdivant, Jonathan G. Kerr, Law, Snakard & Gambill, Fort Worth, Tex., for Fox.

James A. Brigagliano, Richard M. Humes, Paul Gonson, Sol., S.E.C., Washington, D.C., for plaintiff-appellee.

Before GOLDBERG, GARWOOD and JOLLY, Circuit Judges.

GOLDBERG, Circuit Judge:

"All the world's a stage," and this drama was played in two acts: the first set in the financial centers of Dallas and Wall Street; and the second set in a courtroom in Lubbock, Texas.

The financial drama began on June 10, 1983, when Texas Instruments, Inc. ("TI"), announced both a $100 million second quarter loss, and substantially reduced sales forecasts for TI's home computer. This announcement caused the price of TI stock to drop over $50 during the next two trading days. Unusual trading patterns in TI stocks and options suggested to investigators of the Securities and Exchange Commission (the "SEC") that individuals in and around Lubbock, the home of TI's Consumer Group, had been trading on the basis of advanced knowledge of this announcement.

The legal drama began in late June, 1983, when the SEC launched an investigation into trading in TI stock surrounding the June 10 announcement. Ultimately, the SEC brought suit against Appellants, employees of the Consumer Group, for violation of § 10(b) of the Securities and Exchange Act of 1934 and of Rule 10b–5. 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b–5 ("Rule 10b–5"). The district court found, after trial, that the SEC had failed to prove any of the elements of a Rule 10b–5 violation.

The curtain closed, the actors now wish to be paid. Appellants sought attorney's fees under the Equal Access to Justice Act. 28 U.S.C. § 2412(d) (the "EAJA"). The district court denied their request, finding, upon review of the record as a whole, that the SEC's decision to try its case was substantially justified. Appellants seek review of this decision.

The EAJA requires only that a government agency act reasonably. Recent Supreme Court case law, and the law of this circuit, have recognized that the government's performance can be better evaluated by the district judge, from his front row seat, than by an appellate court with only the script at its disposal. *Pierce v. Underwood,* — U.S. ——, 108 S.Ct. 2541, 2547–48, 101 L.Ed.2d 490 (1988); *Broussard v. Bowen,* 828 F.2d 310, 314 (5th Cir.1987) ("[T]he question of substantial justification is essentially for the district court."). Judge Woodward was in a position to hear every word and to witness every gesture. It is not our place to second guess the judgment.

Although the district court did not make findings of fact under Rule 52(a) of the Federal Rules of Civil Procedure, the facts are undisputed, and there is sufficient support in the record for the conclusion that the position of the government was substantially justified. We therefore affirm the decision of the district court.

## I. Facts

In 1983, Appellants Joseph C. Fox, Patricia J. Randall and David L. Ball were

employed in TI's Consumer Group. The Consumer Group, located in Lubbock, Texas, was responsible for the design, production, and marketing of TI's home computer, the TI 99/4a, and its related software.[1] Fox was a Division Manager of the Operations Division of the Consumer Group, and supervised approximately 40 employees, including Ball. Ball was the International Support Manager in the Operations Division, and was responsible for the planning and shipping of TI components to various overseas locations. Randall (now Randall Ball) was the strategic planning manager in the Control Division of the Consumer Group, responsible for analyzing the Consumer Group markets and performing strategic long range planning functions.

The Consumer Group formulated its annual forecast in the last quarter of each year. The Consumer Group then reevaluated this annual forecast on a monthly basis, in order to establish production levels. The management tool used to set monthly production was known as a "what if"—a calculation based on hypothetical sales levels and market conditions.

TI's annual forecast for 1983 predicted sales of 3 million home computers and 19.2 million units of software. From January 1, 1983, through June 10, 1983, the monthly revisions of the annual forecast did not drop below three million home computers. Indeed, the April and May forecasts predicted sales of 3.4 million home computers. However, on Friday, June 10, 1983, TI's board of directors held a special meeting and issued a press release after the close of public trading. In the press release, TI announced that it was substantially reducing production of its home computer hardware and software and was projecting an after-tax loss of approximately $100 million for the second quarter.

On June 9, Fox, Ball, Randall Ball and Fox's supervisor Carl Fleece had purchased a substantial number of "put" options for TI stock.[2] Between the June 10 announcement and Tuesday, June 14, the price of TI stock fell 50 dollars. Because of this drop in the price of TI stock, Fox made a profit of $580,400. Fleece, made a profit of $139,000.[3] Ball made a profit of $21,600, and Randall Ball made a profit of $6,000.

The SEC argued to the district court that Appellants purchased TI puts while in possession of material non-public, corporate information, *SEC v. Fox*, 654 F.Supp. 781, 788 (N.D.Tex.1986), and that they acted with scienter. *Id.* at 792.[4] The SEC argued that among other things, Appellants knew of the shortfalls from the forecasted sales, of the plans for reduction of production, and of the extraordinary meeting. The SEC also argued that the individual Appellants were aware of other information as a result of their various employment positions—in particular, that they had helped calculate certain "what ifs" based on decreased production levels, and that they had access to the Consumer Group's pitch, to be made at the special board of directors' meeting.

Although the Appellants' behavior suggests that they possessed information about the impending actions, they argued in return: that though they all had access to or helped calculate "what ifs" for reduced production, they were simultaneously instructed to calculate "what ifs" for increased production; and that the Consumer Group's pitch to the board of directors actually argued for increased rather than decreased production. Appellants

---

1. In 1982, the Consumer Group contributed 7% of TI's net earnings.

2. "Put" options provide a method for making money when the price of a stock falls. A "put" option is a contract to sell a specific stock at a future date for a specified price. If the price of the specified stock falls below the option price during the period in which the option is open, the holder of the "put" option can make a profit by purchasing stock at the low market price and then selling it for the higher option price.

3. Fleece has not appealed the denial of attorney's fees.

4. Although the SEC's pleadings did not allege scienter, this does not render their position unreasonable. The SEC did attempt to prove scienter at trial, through the use of circumstantial evidence. Here, to decide otherwise would place the EAJA in tension with the Federal Rules' policy of notice pleading.

also argue that they did not act in a vacuum. Even before June 10, all was not well in the Consumer Group. Public information was available that could have led to their trading behavior. As the district court noted,

> Various factors that began in the spring of 1983 contributed to the [second quarter] loss. On February 22 and March 1, TI announced that there was a defect in the transformer of the 99/4a. In the latter part of May, sales of TI's home computer, software, and related products to retailers sharply fell.... Other contributing factors were the "price protection on larger-than expected inventories of consoles at retailers, increased rebate reserves, and home computer prices which declined more rapidly than cost reductions were achieved.

*Id.* at 785–86.

The district court found that the SEC failed to prove any of the elements of a Rule 10b–5 violation. It found: (1) that Appellants were mere rank and file employees—not insiders or recipients of information from insiders; (2) that the "what ifs" were mere forecasts, and not material information; and (3) that Appellants did not act with scienter.

Notwithstanding the SEC's failure to prove the elements of the case, the district court found that the SEC's decision to bring suit was a reasonable one, supported by evidence in their possession, and with reasonable legal justification.

## II. Discussion

One of the oldest rules in our jurisprudence is the American Rule that parties to litigation must bear their own attorney's fees. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Congress in recent years has enacted a number of fee shifting provisions. One of the most important among them is the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A):

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... in-

curred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The EAJA defines the "position of the United States" to include:

> in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based.

*See Griffon v. H.H.S.,* 832 F.2d 51, 54 (5th Cir.1987); *Russell v. National Mediation Board,* 775 F.2d 1284 (5th Cir.1985) (discussing the effect of the 1982 amendments). By its terms, and as interpreted, the EAJA creates an exception to the American Rule where the government is a party. It does not work a complete reversal. Under the EAJA fees are awarded only if the position of the government was not substantially justified. This case turns on whether the decision of the SEC to prosecute Appellants and the SEC's position at trial was substantially justified, even though the district court concluded that the SEC had failed to prove any of the elements of a violation of Rule 10b–5.

### A. Standard of Review

The scope of our review is limited. The Supreme Court recently spoke on the appropriate standard of review of a district court's decision to grant or deny fees, and six Justices agreed that a district court's determination of substantial justification should be reviewed only for abuse of discretion. *Pierce,* 108 S.Ct. 2546–48; *see also id.* at 2555 (Brennan, J., concurring). The Court noted that under the EAJA, "[t]he trial court determination is one for which neither a clear statutory prescription nor an historical tradition exists." *Pierce,* 108 S.Ct. at 2547. The Court therefore turned to principles of judicial administration to determine the scope of review, saying

> with regard to ... determining whether mixed questions of law and fact are to be

treated as questions of law or fact for purposes of appellate review, that sometimes the decision "has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question." ... We think that consideration relevant in the present context as well, and it argues in favor of deferential abuse-of-discretion review. To begin with, some of the elements that bear upon whether the Government's position "was substantially justified" may be known only to the district court. Not infrequently, the question will turn upon not merely what was the law, but what was the evidence regarding the facts. By reason of settlement conferences and other pretrial activities, the district court may have insights not conveyed by the record.... Moreover, even where the district judge's full knowledge of the factual setting can be acquired by the appellate court, that acquisition will often come at unusual expense.

*Id.* at 2547.

Furthermore, the Court was emphatic that separate-from-the-merits EAJA appeals should not become a forum for reexamining the substantive issues of the lawsuit:

> In all separate-from-the-merits EAJA appeals, the investment of appellate energy will either fail to produce the normal law-clarifying benefits that come from an appellate decision on a question of law, or else will strangely distort the appellate process.... [A] ruling that the Government was not substantially justified in believing it to be thus-and-so would ... effectively establish the circuit law in a most peculiar, second-handed fashion.

*Id.* at 2548.

Thus, we are required to review conclusions of fact for clear error and conclusions of law *de novo. See also Broussard v. Bowen,* 828 F.2d 310, 312 (5th Cir.1987); *Russell v. National Mediation Board,* 775 F.2d 1284 (5th Cir.1985); *Knights of the Ku Klux Klan v. East Baton Rouge Par-*

*ish School Board,* 679 F.2d 64, 67–68 (5th Cir.1982). Here, however, the merits have not been appealed, and the facts are uncontested. We therefore need only determine whether the district court abused its discretion in concluding that the SEC was substantially justified in bringing suit.

### B. Substantial Justification

The scope of the district court's discretion turns on the meaning of the word "substantial." As the Court noted in *Pierce,* the word "substantial" has more than one definition. "Substantial justification" may mean either that the justification for the government action must be "considerable in amount," or simply justified "in substance or the main." 108 S.Ct. at 2549. Until recently, the circuits were divided over whether substantial justification meant reasonableness or something more. *Compare Griffon,* 832 F.2d 51, 52, *with Taylor v. Heckler,* 835 F.2d 1037 (3rd Cir. 1987). In *Pierce,* however, the Court resolved this conflict authoritatively, stating that

> as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.

*Id.* at 2550; This is consistent with the position taken in this Circuit. *Broussard,* 828 F.2d at 312; *Herron v. Bowen,* 788 F.2d 1127, 1130 (5th Cir.1986). *But see id.* at 2555–57 (Brennan, J., concurring) (arguing for a standard higher than mere reasonableness).

### C. Abuse of Discretion?

As we noted above, in determining whether the district court abused its discretion by concluding that agency action was substantially justified, we must look at

both the underlying agency action, as well as the agency's litigation position. In a case such as this one, where the SEC is acting as prosecutor, we must examine whether the agency had sufficient information to support a decision to prosecute, and whether the arguments at trial and in pleadings were reasonable in law and fact.

With respect to the decision to prosecute, there is no question that the unusual trading patterns in TI stock, the employment positions of Appellants, and their trading behavior was sufficient to support a decision to investigate. The decision to go to trial is a somewhat closer question.

In deciding whether the government's litigation position was substantially justified, we must look at objective factors, such as the terms of relief, the stage of the proceedings at which they were settled or decided, and at subjective factors such as the strength of the Appellants' arguments. *Pierce*, 108 S.Ct. at 2552.

The objective factors suggest that the government was substantially justified in bringing suit. Although the government ultimately failed to prove its case, the case survived to the very end of a lengthy trial, and provoked a thoughtful district court opinion.

■ Appellants argue, however, that despite all of the facts presented at trial, the SEC failed to prove their prima facie case, and that therefore the SEC acted unreasonably. The legislative history of the EAJA indicates that loss at trial does not determine the availability of fees:

> The standard ... should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the government to establish that its decision to litigate was based on a substantial probability of prevailing.

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, 1980 U.S.Code Cong. & Admin.News 4953, 4989–90; *see USLIFE Title Ins. Co. of Dallas v. Harbison*, 784 F.2d 1238, 1243 (5th Cir.1986). We have said that the "substantial justification" standard was designed to allow the government to advance "in good faith ... novel but credible ... interpretations of the law that often underlie vigorous enforcement efforts." *Russell v. National Mediation Board*, 775 F.2d 1284, 1290 (5th Cir.1985). Thus, even where the facts are stipulated, and the law is correctly applied, and the government fails to prove any element necessary to its case, the district court retains discretion to determine whether the government position was substantially justified. *Pierce*, 108 S.Ct. at 2548. Thus we must dust off the positions taken by the government at trial and examine them in the light in which they would have appeared prior to trial. We then must determine whether the decision to go forward to trial was a reasonable exercise of prosecutorial discretion.

### 1. Insiders

The district court found that Appellants were not "insiders." Rule 10b–5 imposes a duty to disclose, or abstain from trading on the basis of non-public material corporate information. The duty to disclose only arises if the person is in a position of trust, *Chiarella v. United States*, 445 U.S. 222, 235, 100 S.Ct. 1108, 1118, 63 L.Ed.2d 348 (1980), or the recipient of information from a person in a position of trust (a "tippee"). *Dirks v. SEC*, 463 U.S. 646, 654–55, 103 S.Ct. 3255, 3261–62, 77 L.Ed.2d 911 (1983). The district court found that Appellants, mere rank and file employees, were not insiders in the traditional sense, and that the SEC failed to prove that they had received information from an insider. Appellants do not allege, however, that the SEC acted unreasonably in attempting to prove that they were insiders, and we need not examine whether the government's position was substantially justified.

### 2. Materiality

■ The district court found that the information possessed by Appellants was not material. Information is material if it would be viewed by a reasonable investor as significantly altering the total mix of information available concerning the value of a company's stock. *SEC v. Blatt*, 583 F.2d 1325, 1330 (5th Cir.1978). Though

sales projections such as those involved in this case are only material when they can be calculated with substantial certainty, *James v. Gerber Products Co.*, 587 F.2d 324, 327 (6th Cir.1978), a proposal need not be final or consummated in order to be relevant to a shareholder's decision-making process. *SEC v. Mize*, 615 F.2d 1046, 1055 (5th Cir.), *cert. denied*, 449 U.S. 901, 101 S.Ct. 271, 66 L.Ed.2d 131 (1980); *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 203–06 (5th Cir.1988). *See also, Basic Inc. v. Levinson,* —— U.S. ——, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

Appellants had access to, and helped to compile a number of forecasts based on sales figures well below those projected in the annual forecast, as well as other forecasts compiled prior to the special meeting. Even though the SEC stipulated that the decision to reduce production was not made until the June 10 meeting itself, enough information was available to them that knowledge of the forecasts, knowledge of problems with the 99/4–a, and knowledge that the meeting was about to occur taken together could have been deemed material.

Here, the question of materiality was a close one, and the district court could have found that the information possessed was not material while finding that the government's position was substantially justified. As we noted in *Mize*,

> the determination of materiality "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact."

*Id.* at 1053 (quoting *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d 757 (1976)). Thus even where the facts are sufficient to support a finding of materiality, "the question of materiality ... [is] within the legitimate province of the [finder of fact]." *Id.* Here the facts in the record would have supported a finding of materiality, though the district court properly concluded otherwise. Therefore, the district court did not abuse its discretion by concluding that the SEC was substantially justified in arguing that defendants were in possession of material information.

## 3. Scienter

Finally, Appellants argue, that the SEC failed to put on any evidence whatsoever to prove that Appellants acted with scienter, an element of a 10b–5 violation. *Aaron v. SEC,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed. 2d 611 (1980). It is well established, however, that scienter may be established by circumstantial evidence. *Dirks v. SEC,* 463 U.S. 646, 663, 103 S.Ct. 3255, 3266, 77 L.Ed.2d 911 (1983); *Herman & MacLean v. Huddleston,* 459 U.S. 375, 390–91 n. 30, 103 S.Ct. 683, 692 n. 30, 74 L.Ed.2d 548 (1983). The SEC presented evidence from which a fact-finder could have inferred scienter. They presented evidence of Ball's, Randall Ball's and Fox's attempts to conceal the timing of their trades from the SEC. They presented evidence that Randall Ball had attempted to create a misleading paper trail. They present evidence of visits by Ball to Fox's office while Fox was speaking with his broker. They presented evidence that Ball had encouraged other TI employees to buy TI "puts." In addition, the SEC presented evidence that the volume of trading engaged in by Appellants far exceeded any previous option trading by any of them. Indeed, Ball and Randall opened their accounts expressly for the purpose of making these trades.

Thus, we cannot say that the district court abused its discretion when it determined that the SEC was substantially justified in arguing to the court and attempting to prove that Appellants acted with scienter.

## III. Conclusion

A contested trial is not a set piece. Unlike a play it is not scripted in advance. One day a litigant and his lawyer leave the courtroom happy people, pleased with the progress of the case. The next day, surprising facts may come to light which turn the tide. Like great plays, trials have their high moments and their lows. Many a dramatis personae first appears full of high

hopes, aspirations, and expectations of future happiness, only to have those hopes dashed before the final curtain. *See, e.g.,* Shakespeare, *Romeo and Juliet* (c. 1591). The trial judge, having seen each day's performance, is in a much better position to determine whether the government's lawyers acted reasonably—whether the decision to bring suit was reasonable, based on what was known prior to trial, and whether the lawyers behaved reasonably as the case progressed.

The SEC was soundly defeated at trial, and the case was not artfully pleaded, but the SEC introduced evidence of each element of a Rule 10b–5 violation. In addition, the question of materiality lies particularly with the finder of fact. For these reasons, regardless of whether we would have done precisely the same thing, we are compelled to conclude that the district court did not abuse its discretion. The order of the district court is AFFIRMED.