United States Court of Appeals,

Fifth Circuit.

No. 91–2848.

J. Jesus Faustino AGUILAR–AYALA, et al., Plaintiffs–Appellants,

v.

Cecilio RUIZ, etc., et al., Defendants–Appellees.

Sept. 25, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before GOLDBERG, HIGGINBOTHAM, and DAVIS, Circuit Judges.

GOLDBERG, Circuit Judge:

The government, in its campaign against the unlawful entry into the United States by foreign nationals, had deployed a practice of detaining certain aliens as material witnesses for the criminal prosecution of those persons charged with transporting them across the border. The detained aliens, unable to reach an armistice with the government, returned fire with this lawsuit, contending that the government's operation of detaining them indefinitely—rather than deposing and releasing them—violated United States statutory and constitutional law. With the assistance of their generals and subalterns of the bar, the aliens advanced mightily until the district court proclaimed their victory. But though they won the war on the merits, they lost the battle for attorney's fees. The district court concluded that the government's resistance to the aliens' crusade was substantially justified, so it declined to reward the warriors of the bar with all the spoils of war.

The aliens appeal to this tribunal seeking reparations from the government in the form of attorney's fees. Concluding that the time and effort expended by the warriors of the bar are the anticipated casualties of war, we AFFIRM.

I.

18 U.S.C. § 3144 provides for the detention of material witnesses in order to insure their

presence at a criminal proceeding.  In its entirety, the statute provides:

### § 3144. Release or detention of a material witness

If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title [Release or detention of a *defendant* pending trial].  No material witness may be detained because of inability to comply with any condition of release *if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice.*  Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

18 U.S.C. § 3144 (emphasis added).  Under the statute, either the government or a criminal defendant can effectuate the detention of a material witness upon a showing that such material witness will, in all likelihood, be unavailable for the criminal proceeding.  A material witness may not be detained, however, if a deposition would suffice as an adequate alternative to the witness' live testimony at the proceeding.  That means, of course, that the deposition testimony must be admissible notwithstanding any objections by the parties (the government or the criminal defendant).  If the deposition would prove admissible over any objection under the Confrontation Clause of the United States Constitution or the Federal Rules of Evidence,[1] then the material must be deposed rather than detained.

A witness seeking to be deposed and released in lieu of detention may move the district court under Federal Rule of Criminal Procedure 15, which provides in relevant part:

### Rule 15. Depositions

**(a) When Taken.**  Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that the testimony of such witness be taken by deposition....  *If a witness is detained pursuant to section 3144 of title 18, United States Code, the court on written motion of the witness and upon notice to the parties may direct that the witness' deposition be taken.  After*

---

[1]*See* Fed.R.Evid. 804 [hearsay].  The deposition testimony is admissible as "substantive evidence if the witness is unavailable, as unavailable is defined in Rule 804(a) of the Federal Rules of Evidence...."  Fed.R.Crim.P. 15(e).

*the deposition has been subscribed the court may discharge the witness.*

Fed.R.Crim.P. 15(a). Read together, Rule 15(a) and § 3144 provide a detained witness with a mechanism for securing his own release. He must file a "written motion," Fed.R.Crim.P. 15(a), requesting that he be deposed. The motion must demonstrate that his "testimony can adequately be secured by deposition," and that "further detention is not necessary to prevent a failure of justice." 18 U.S.C. § 3144. Upon such a showing, the district court *must* order his deposition and prompt release. *Id.* ("No material witness may be detained" if he makes such a showing). Although Rule 15(a) is couched in the permissive "may," not the mandatory "shall," Fed.R.Crim.P. 15(a) ("the court ... *may* direct that the witness' deposition be taken"), it is clear from a conjunctive reading with § 3144 that the discretion to deny the motion is limited to those instances in which the deposition would not serve as an adequate substitute for the witness' live testimony: that a "failure of justice" would ensue were the witness released. *See* 18 U.S.C. § 3144. Absent a "failure of justice," the witness must be released.

These provisions for deposing material witnesses detained pending trial—as applied to undocumented aliens—are the focus of this case.

II.

To successfully prosecute persons unlawfully transporting undocumented aliens into the United States, the Department of Justice, through the United States Attorney's Office for the Southern District of Texas ("the government"), engaged in the practice of detaining some undocumented aliens as material witnesses for the criminal prosecution of the alleged alien smugglers. As authority for the detentions, the government relied on 18 U.S.C. § 3144. Two Mexican nationals, allegedly detained by the government as material witnesses pursuant to § 3144, brought this lawsuit to challenge the government's practice.

The two aliens were arrested in Falfurrias, Texas, on November 14, 1987, shortly after they

entered this country illegally. They were allegedly detained as material witnesses in connection with the prosecution of persons charged with smuggling them into the United States. Through appointed counsel, the two aliens moved the district pursuant to Rule 15(a) of the Federal Rules of Criminal Procedure for an order requiring the government to secure their testimony through deposition and release them, rather than detain them until trial. A United States Magistrate Judge granted their motion, ordering the government to depose and release them within seven days. Not yet deposed eight days later, the Magistrate Judge ordered their release on an unsecured $5,000 appearance bond. Before the aliens were liberated, however, they were transferred to the custody of immigration officials for deportation proceedings. An immigration judge promptly entered an order of deportation, and the two alien-witnesses waived their rights to appeal. Their deportation was delayed, however. According to the government, the aliens were further detained under the Immigration and Nationality Act. The aliens maintain that they were detained by the government under the material witness detention statute, 18 U.S.C. § 3144, to insure their presence at the alien-smuggling prosecution.

Still in custody, the aliens filed the instant action on January 27, 1988 as a "Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief—Class Action" in the United States District Court for the Southern District of Texas. Invoking 18 U.S.C. § 3144, Federal Rule of Criminal Procedure 15(a), and the Fifth Amendment to the United States Constitution, they challenged the government's practice of detaining alien-witnesses rather than deposing and releasing them. In their prayer for relief, they requested that the court certify a class and enjoin the government from detaining alien-witnesses for longer than ten days where a deposition would adequately preserve the criminal defendant's right to confrontation under the Sixth Amendment. They narrowly tailored their prayer for relief in accordance with the provisions of § 3144 and Rule 15(a). The plaintiffs also requested an award of attorney's fees.

Not long after they filed their original petition/complaint, the two aliens were released from

custody, presumably because the government no longer needed them: The government had disposed of the underlying criminal prosecution for which the aliens were originally detained as material witnesses.[2] The two aliens nevertheless proceeded with the lawsuit, seeking leave to amend their petition/complaint on March 11, 1988 to add several more named plaintiffs who were then presently being detained as material witnesses.[3] As to all named plaintiffs and the potential class-plaintiffs, the amended complaint alleged that alien-witnesses were being detained rather than deposed in the absence of a judicial determination that (1) their testimony could not adequately be secured by deposition and (2) their further detention was necessary to prevent a failure of justice. (3 R. 324)

The government moved to dismiss the case on several grounds. It argued that the plaintiffs were being detained, not under § 3144, but under the Immigration and Nationality Act (citing 8 C.F.R. 215.3(g)), which, according to the government, allows for the detention of aliens for a period of up to six months following an order of deportation. In this connection, the government contended that the aliens failed to exhaust their administrative remedies. The government opposed the certification of a class on the ground that plaintiffs did not satisfy the typicality requirement, *see Crawford v. Western Electric Co.,* 614 F.2d 1300 (5th Cir.1980), and because the case was moot by virtue of the fact that the two original named-plaintiffs were release from custody. Relying on the permissive language in Rule 15(a), the government also suggested that a standing order of general applicability would be inappropriate because the propriety deposing a material witness instead of detaining him must be determined on a case-by-case basis. The government expressed particular concern over satisfying the "unavailability" requirement of Fed.R.Evid. 804. Finally, the government

---

[2]One of the defendants pled guilty, and the government dismissed the indictment with respect to the codefendant.

[3]One of those detainees had already been deposed, but was being detained until trial by order of the district court on motion by the criminal defendant. (2 R. 321) Another newly named plaintiff-alien-witness was awaiting a ruling on his motion for release on personal recognizance or alternatively for an order requiring that he be deposed and released, which he had filed ten days earlier. No hearing had been set. Two other newly named plaintiff-alien-witnesses, having moved for an order requiring their deposition and release, were being detained on a $5,000, ten percent bond that they could not afford: The Magistrate Judge declined to order that their depositions be taken.

argued, based on its reading of Rule 15(a), that the detained witness would have to demonstrate "exceptional circumstances" to justify the deposition.

"Recognizing the need for a comprehensive plan," the district court entered a standing order on July 15, 1988, governing the handling of material witnesses in the Brownsville Division of the Southern District of Texas. Following the lead of the Western District of Texas,[4] the district court's order, as paraphrased herein, required, among other things:

> that counsel be appointed to represent material witnesses;
>
> that the witness, the government, or the criminal defendant can move the court to order that the material witness be deposed, said motion to be referred to a United States Magistrate Judge for disposition;
>
> that a deposition shall be ordered absent conclusive proof that the release of the material witness would result in a failure of justice;
>
> that the deposition be conducted within ten (10) days of the magistrate's order requiring it and that the witness be released within twenty-four (24) hours after the deposition is subscribed and signed [if the witness has not waived signing];
>
> that a decision by the magistrate to detain the material witness pending trial rather than depose him, or overruling any objection to the deposition procedure shall be reviewable by the District Court; and
>
> that the material witness be released after forty-five (45) days, absent a district court ruling that further detention is necessary.

*See J. Jesus Faustino Aguilar–Ayala, et al. v. Cecilio Ruiz, et al.,* No. CA–B–88–12 (S.D.Tex. July 15, 1988) (unpublished order) (attached hereto as an Appendix). More than anything, the district court order established a procedural framework for implementing the material witness detention statute. Other than commanding that the material witness be released after forty-five days and specifying certain time limitations, the district court's standing order, like the plaintiffs' prayer for relief, tracked the requirements of § 3144 and Rule 15(a).

---

[4]*See In re Class Action Application for Habeas Corpus ex rel. All Material Witnesses in the Western District of Texas,* 612 F.Supp. 940 (W.D.Tex.1985)

The district court eventually adopted the standing order as the final judgment of the court. At no time did the district court address the merits of the government's motion to dismiss. Nor did it resolve the factual dispute over whether the aliens' continued detention was based on the material witness detention statute or the Immigration and Nationality Act.

Notwithstanding all of the government's protestations leading up to the entry of the order, the government did not move the court to vacate the standing order, did not oppose its adoption as a final judgment of the court, and, curiously, did not take an appeal from it.[5] In a post-judgment motion for attorney's fees under the Equal Access to Justice Act, the district court held that the government's position both before and during the litigation was substantially justified in light of the lack of clarity of the law on this issue:

> 18 U.S.C. §§ 3144 and 3142 provide for the detention of material witnesses in a criminal case. Neither section sets a time limit for such detention. *The issue of whether continued detention violates the rights of aliens was unresolved at the time of the lawsuit.* The Court's Standing Order was essentially a matter of first impression which required aggressive representation by both parties. The Court therefore finds that the Government's position in this action was substantially justified.

*J. Jesus Faustino Aguilar–Ayala, et al. v. Cecilio Ruiz, et al.,* No. CA–B–88–12 (S.D.Tex. June 3, 1991) (unpublished order) (emphasis added). Accordingly, the district court declined to award attorney's fees to the plaintiffs. Plaintiffs appealed.

### III.

Before we address the sole issue before us—whether the district court correctly concluded that the government was substantially justified in adopting a practice of detaining material witnesses and resisting the instant litigation—we think it necessary to identify an issue that is *not* before us. The government did not appeal from the final judgment adopting the district court's order. We are not called upon, therefore, to assess its validity. However, because we must evaluate the strength of the

---

[5]At oral argument, the government counsel explained that the government did not appeal the standing order because it concluded that it could "live with it."

government's position in response to this litigation, our opinion may be read as expressing a view on the propriety of such a standing order. We caution the reader that it should not. We decide only the limited question before us and that is all.

## A.

The Equal Access to Justice Act, 28 U.S.C. § 2412(d), provides for an award of attorney's fees for the prevailing party and against the government if the government's position with respect to the litigation was not "substantially justified." *Perales v. Casillas,* 950 F.2d 1066, 1072 (5th Cir.1992) (applying *Commissioner INS v. Jean,* 496 U.S. 154, 158, 110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990)). "Substantially justified" means "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Id.* at 1073 (quoting *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988)). "A "substantially justified' determination properly focuses on the governmental misconduct giving rise to the litigation, as well as on the government's litigation position." *Id.* (citing *Jean,* 496 U.S. at 165, 110 S.Ct. at 2323; *SEC v. Fox,* 855 F.2d 247, 251–52 (5th Cir.1988)). Unless the government's position leading up to, and in response to, the litigation has a "reasonable basis both in law and fact," the district court should award attorney's fees to the prevailing party, absent "special circumstances" which would make an award unjust. *Id.* A district court's determination that the government's position was substantially justified (or not so) is reviewed by this court under the deferential "abuse of discretion" standard, except that "underlying conclusions of law are reviewed *de novo* and conclusions of fact are reviewed for clear error." *Id.* at 1072–73 (citing *Pierce,* 487 U.S. at 562, 108 S.Ct. at 2548–49; *Fox,* 855 F.2d at 251).

## B.

The district court's decision to deny an award of attorney's fees was premised on its assessment that the "issue whether continued detention [under 18 U.S.C. § 3144] violates the rights of aliens was unresolved at the time of the lawsuit." In a literal sense, that legal conclusion was

correct. At the time the government was detaining the aliens as material witnesses, this court had not yet expressed a firm opinion on the legality of such detentions and the propriety of employing the deposition procedure. The Western District of Texas had a similar order in place at the time, but this court had not reviewed it head-on. We did reverse a criminal conviction in one case, however, on the ground that a Rule 15(a) / § 3144 deposition taken pursuant to the Western District's standing order was not admissible. *See United States v. Guadian–Salazar,* 824 F.2d 344 (5th Cir.1987). The government seizes on that opinion to justify its resistance to the deposition procedure.

At the urging of the defendant-appellant *and the government* in *Guadian–Salazar* were reversed the conviction on Confrontation Clause grounds. The defendant-appellant argued, and the government conceded, that the deposition testimony procured in accordance with the Western District's standing order, was inadmissible because the government made no showing that the alien-witnesses were "unavailable." *See Ohio v. Roberts,* 488 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980) (testimony from preliminary hearing admissible at trial over Confrontation Clause objection where declarant was unavailable); Fed.R.Evid. 804(b)(1) (deposition testimony is admissible over hearsay objection if, inter alia, witness is unavailable). We were unimpressed by the government's efforts in that case to secure the witnesses' presence at trial. As in the case at bar, the material witnesses were undocumented aliens. By order of the district court, the alien-witnesses were deposed by the government and subjected to cross-examination by the defendant. Following the deposition, the government transported the alien-witnesses to the border, served them with a subpoena, notified them that they were needed as witnesses at trial, and instructed them to appear at the border on a specified date so that they could be transported to the trial. However, the government advanced them no money to fund their return (knowing that they resided several hundred miles from the border), did not contact them during the intervening month before trial, nor was any government agent present at the specified location on the relevant date. Under those facts, we held, and the government conceded, that the government failed to carry its burden of establishing that the witnesses were truly "unavailable," and, thus, the admission of the deposition testimony was reversible

error. *Guadian–Salazar,* 824 F.2d at 346–48.

We did not, in *Guadian–Salazar,* rule upon the validity of the Western District's standing order, primarily because the briefs on appeal did not address significant questions germane to our review. Among other omissions in the government's brief, we identified the government's failure to explore alternatives to extended detention or deportation of alien-witnesses such as "paroling" the witnesses into the community pending trial. *Id.* at 348. We were concerned that the government had not discussed "the framework of 18 U.S.C. § 3142, a comprehensive procedural provision enacted by Congress to guide judicial officers in considering ... the conditional release or continued detention of material witnesses." *Id.* Moreover, we observed that "relevant agency regulation mandate that no alien material witness shall depart, or attempt to depart from the United States unless the prosecuting authority consents to his departure." *Id.* (citing 8 C.F.R. § 215.2(a) (1987)). Indeed, the government has taken the position in this litigation that it is entitled to, and in fact did, detain the alien-witnesses following the deportation order as an administrative penalty.

It is clear that our decision in *Guadian–Salazar* did not resolve, one way or the other, the conditions under which deposition testimony would prove admissible under the statutory framework, bearing in mind the constitutional limitations imposed by the Confrontation Clause on the admissibility of hearsay testimony. Although we reversed the district court for admitting the deposition in that case, we did not hold that such depositions are categorically inadmissible under the Confrontation Clause. Quite to the contrary, we intimated that such a deposition would pass muster under the Sixth Amendment provided that the government satisfied its burden of making the necessary showing of unavailability.

In a more recent decision stemming from the standing order at issue in this case, we clarified that the government bears the burden of proving the witness' unavailability as a predicate to the admission of the deposition testimony. *United States v. Martinez–Perez,* 916 F.2d 1020, 1023 (5th

Cir.1990). We reversed the conviction in *Martinez–Perez* because the Government adduced no evidence that the alien-witness, who had been released from detention following the deposition, was unavailable to testify at trial: The government "introduced no evidence of any efforts to procure [the witness'] presence.... [The witness] was never subpoenaed to appear at trial and ... never tendered a witness fee." *Id.; see also United States v. Lopez–Cervantes,* 918 F.2d 111 (10th Cir.1990) (reversing criminal conviction where government failed to establish alien-witness' unavailability); *United States v. Fuentes–Galindo,* 929 F.2d 1507 (10th Cir.1991) (same, following *Lopez–Cervantes*). *But see United States v. Rivera,* 859 F.2d 1204, 1206–09 (4th Cir.1988) (concluding that alien-witnesses, who voluntarily left the country after they were deposed and released, were "unavailable," rendering their deposition testimony admissible despite the fact that the government approved the deposition procedure, released the aliens, and made no effort to secure their presence at trial), *cert. denied,* 490 U.S. 1020, 109 S.Ct. 1743, 104 L.Ed.2d 180 (1989); *United States v. Terrazas–Montano,* 747 F.2d 467, 469 (8th Cir.1984) (holding that the deposition testimony of alien-witnesses who had engaged in a hunger strike to protest their detention was admissible on account of their unavailability even though the government deported them, knowing that the witnesses would not return, and made no effort to secure their appearance at trial).

The Tenth Circuit, confronted with the same question presented to this court in *Martinez–Perez* and *Guadian–Salazar*—whether the district court had erred in admitting the deposition testimony of an alien-witnesses—affirmed a criminal conviction. *United States v. Eufracio–Torres,* 890 F.2d 266 (10th Cir.1989), *cert. denied,* 494 U.S. 1008, 110 S.Ct. 1306, 108 L.Ed.2d 482 (1990). The district court in that case permitted the government to depose the alien-witnesses over the objection of the criminal defendant. The court also denied the defendant's motion to detain the witnesses pending trial and ordered their release. Before the witnesses were transferred to the custody of INS, the government served them with trial subpoenas, instructed them on how to return for trial and how to obtain the necessary travel funds. Although the witnesses promised to return, they did not appear at trial. Following an evidentiary hearing on the issue of the

alien-witnesses' unavailability, the district court admitted the deposition testimony over objection, concluding that the witnesses were truly unavailable and that the government had made good-faith (i.e., reasonable) efforts to secure their presence at trial. The Tenth Circuit affirmed, reasoning that

> The law does not require the government to utilize an absolute means of attempting to assure the appearance of a witness, only a reasonable means. The facts of this case establish the government utilized reasonable means to assure the attendance of the witnesses. The fact that the means utilized were unsuccessful does not mean that the government's efforts were not made in good faith.

*Eufracio–Torres,* 890 F.2d at 270.

We gather from these cases that deposition testimony is admissible only if the government has exhausted reasonable efforts to assure that the witness will attend trial. The ultimate success or failure of those efforts is not dispositive. So long as the government has employed reasonable measures to secure the witness' presence at trial, the fact that the witness has nevertheless failed to appear will not preclude the admission of deposition testimony. Such a witness will be deemed "unavailable," *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980); Fed.R.Evid. 804(a), and the deposition is admissible over the defendant's Confrontation Clause and hearsay objections.

Nevertheless, we are satisfied that the government was not patently unreasonable in concluding that the detention of alien-witnesses was the only means of *guaranteeing* the admissibility of their testimony. The government could have entertained a legitimate concern that its good-faith efforts to secure the witness' presence at trial, if unsuccessful, would not be enough to overcome the Sixth Amendment right of the criminal defendant to confront his accusers, in which case the deposition would be excluded. After all, the witnesses were undocumented aliens subject to deportation (and criminal sanction) in connection with their entry into this country. They were hardly motivated to stick around for trial to testify against the persons (perhaps friends) who assisted them in crossing the border. The government might reasonably doubt that the aliens would remain within

the reach of judicial process during the pendency of trial and that the government would have to demonstrate extraordinary efforts to secure the witnesses' appearance at trial to insure the admissibility of the deposition testimony. Of course, this opinion should allay the government's fears, putting to rest any lingering confusion over the admissibility of deposition testimony.

We do not mean to suggest that an alien-witness may never be detained pending trial. The statutory framework provides for the continued detention of a witness where his release would result in a "failure of justice." 18 U.S.C. § 3144. Either party, upon the requisite showing, can effectuate the detention of a material witness pending trial. While we make no attempt to catalog any or all of the possible justifications which might warrant continued detention, we note that in some cases the need for *the criminal defendant* to confront the witness *at trial* (rather than at deposition) might outweigh the material witness' liberty interest in being released immediately. No doubt, few defendants regard trial by deposition as an adequate substitute for confronting the witness in the presence of the jury. Only through live cross-examination can the jury fully appreciate the strength or weakness of the witness' testimony, by closely observing the witness' demeanor, expressions, and intonations. Videotaped deposition testimony, subject to all of the rigors of cross-examination, is as good a surrogate for live testimony as you will find, but it is still only a substitute. Even the advanced technology of our day cannot breathe life into a two-dimensional broadcast.

Trial by deposition steps hard on the right of criminal defendants to confront their accusers. To be sure, deposition testimony is not routinely admissible: Only upon the exceptional showing of necessity (i.e., unavailability) will a court be justified in admitting such testimony over the defendant's objection. When a particular witness' testimony is the linchpin of the government's case, or when the witness' credibility is severely in doubt, the continued detention of that witness might be necessary to avert a "failure of justice," especially if the continued detention would be relatively brief.

We recognize that a "failure of justice" is more likely to ensue when the criminal defendant,

as opposed to the government, is denied the guarantee of having the witness present at trial. It would be the rare case, indeed, in which *the government* could establish the inadequacy of the deposition procedure and hence the potentiality of a "failure of justice." After all, the criminal defendant, not the government, has a *constitutional* right to confrontation. The government, to be sure, only objects to the deposition procedure on account of the risk that the deposition testimony will not be admitted over the defendant's Confrontation Clause objection. Other than voicing that concern, the government interposes no global objection to the deposition procedure. Nor can we envision any.

The government is uniquely capable of taking reasonable measures to insure that the witness will appear at trial. As we indicated in *Guadian–Salazar,* the government can "parole" the alien-witness into the community (rather than deport him) so that he will remain within the reach of judicial process; or at the very least, the government can provide the deported alien-witness with the wherewithal to arrange and finance his return to court for trial. A criminal defendant ordinarily cannot.

We make this point to underscore our conviction that undocumented aliens have an overriding liberty interest in not being detained as material witnesses, when the deposition procedure serves as an adequate alternative to prolonged detention. When a witness has been detained solely at the insistence of *the government,* we can conceive of comparably few instances in which *the government's* preference for live testimony over deposition testimony would outweigh the witness' right to be free from continued detention.

With the caveat that the law on the admissibility of material witness depositions is now well-settled, we conclude that the district court did not abuse its discretion in finding that the government's position with respect to its conduct leading up to the litigation was "substantially justified."

C.

Standing orders like the one here at issue have come under attack by other courts. The Tenth Circuit, in particular, has repeatedly expressed its dismay with a standing order employed by the United States District Court for New Mexico. *See United States v. Lopez–Cervantes,* 918 F.2d 111 (10th Cir.1990); *United States v. Fuentes–Galindo,* 929 F.2d 1507 (10th Cir.1991). The standing order in place in New Mexico, however, is different in several significant respects from the one at issue here: It authorizes a Magistrate Judge to order the deposition of a witness-detainee in the absence of a Rule 15(a) motion, and in the absence of a § 3144 affidavit establishing that the witness' testimony is material and that the witness' presence at trial could not be obtained by subpoena. The Tenth Circuit has twice reversed criminal convictions on the ground that the standing order fails to properly implement the requirements of Rule 15(a) and § 3144, thus rendering the depositions, taken pursuant to the order, inadmissible. *Lopez–Cervantes,* 918 F.2d at 113; *Fuentes–Galindo,* 929 F.2d at 1509–10. The court has communicated its concern that under the standing order, "the magistrate is compelled to follow the procedure without assessing the particular circumstances of the case." *Fuentes–Galindo,* 929 F.2d at 1510.[6]

In marked contrast, the standing order adopted by the Southern District of Texas carefully implements the requirements of both Rule 15 and § 3144. To trigger the process, either party or the witness must make a motion. The court must then order the deposition "absent conclusive proof that the release of the material witness would result in a failure of justice." To give meaning to the term "reasonable period," the standing order imposes certain time limitations. *See* 18 U.S.C. § 3144 ("Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken."). Unlike the standing order in New Mexico, the one at issue here

---

[6]The court was troubled that "nothing in the standing order ... requires that "exceptional circumstances' be found." *Fuentes–Galindo,* 929 F.2d at 1510. It would appear that the court was intimating that the deposition procedure is only appropriate upon a showing of "exceptional circumstances." That suggestion does not square with the plain language of the rule as applied to *detained* witnesses. Witnesses detained under § 3144 are explicitly excepted from demonstrating exceptional circumstances to effectuate their own deposition. *See* Rule 15(a).

endeavors to comport with the statutory language. We offer this observation only because it weighs against the government in our determination of whether it was "substantially justified" in opposing the litigation. The plaintiffs narrowly tailored their prayer for relief to fit within the statutory framework, and, yet, the government resisted.

But the government's resistance to the complaint was directed primarily toward the standing of the particular plaintiffs bringing the action. In addition to its trepidation over the admissibility of material witness depositions, the government contended that although the plaintiff-alien-witnesses who brought this lawsuit were originally being detained as material witnesses, their continued detention (after the Magistrate Judge ordered that they be deposed) was premised on the Immigration and Nationality Act. In other words, the government disputed the factual assertion that plaintiffs were being detained as material witnesses.[7] This factual dispute was never resolved by the district court, because the standing order, which was later adopted as the final judgment, concluded this litigation *before* the district court resolved the factual questions presented by the parties.

We are satisfied that the government's opposition to the complaint, based on the factual assertion that the aliens were not detained under § 3144, was not an unreasonable litigation stance.[8] The government asserted that the plaintiffs who brought this lawsuit did not have standing to challenge detentions under § 3144 because they were not held as material witnesses beyond the point in time that the Magistrate Judge ordered their depositions. If that was true in fact, then it would have called into question the jurisdiction of the district court to award plaintiffs the relief they requested.[9] Such a defense to the lawsuit itself would have had a "reasonable basis both in law and

---

[7]Plaintiffs do not dispute that until a magistrate orders the depositions, undocumented aliens can be detained under § 3144 as material witnesses.

[8]We do entertain serious doubts about the strength of the other arguments advanced by the government in their motions to dismiss, but conclude that, on the whole, the government's position during the litigation was not unreasonable.

[9]The government has not appealed from the final judgment, however, so we are without jurisdiction to reach that issue.

fact," rendering the government's legal position "substantially justified." *See Perales,* 950 F.2d at 1073.

IV.

At the inception of this litigation and before, the terrain was not sufficiently explored that all legal strategists would inveigh the tactics and maneuvers of the government. It is our present view that the government's position was vulnerable to attack. But it is also our view that the government's arsenal was not so lacking in ammunition that it could predict the capture of its redoubt.

The district court did not abuse its discretion in declining to award attorney's fees. The judgment below is AFFIRMED.

APPENDIX

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

J. Jesus Faustino Aguilar–Ayala, Rosalio Luna–Zavala, Ernesto Cantu–Lucero, Alvaro Cantu–Rios, Gamaliel Perez–Savedra, Edgar Odilio de Leon–Lopez, Hector Ines Pena–Alvarado, Edith Consuelo Grisales–Castano, and Claudia Maria Angelica Gomez, on their own behalf and on behalf of all others similarly situated

vs.

Cecilio Ruiz, Supervisory Detention Officer of the U.S. Immigration and Naturalization Service; OMER SEWELL, District Director of the U.S. Immigration and Naturalization Service; B.S. BAKER, United States Marshal; EDWIN MEESE, Attorney General of the United States; HENRY ONCKEN, United States Attorney for the Southern District of Texas

C.A. NO. B–88–012

Filed July 15, 1988

ORDER

On this the 15th day of July, 1988 came to be considered the issues raised by the Plaintiffs in this class action habeas corpus petition. The Court has reviewed the pleadings and has fully

considered the law applicable to the detention of material witnesses. The Court has also carefully considered the peculiar factual circumstances of the detention of material witnesses in this Division, where such witnesses are typically undocumented aliens who are rarely able to meet the conditions of their release.

Section 3144 of Title 18 of the United States Code provides that material witnesses who cannot meet the conditions of their release be detained only if (1) their testimony cannot be adequately secured by deposition, and (2) a failure of justice would result from releasing the witness from custody after his or her deposition has been taken. The statute additionally provides that such witnesses may be detained "for a reasonable period of time" until the witness' deposition can be taken pursuant to Rule 15 of the Federal Rules of Criminal Procedure. Rule 15 provides that upon written notice of a material witness and upon notice to the parties, the Court may direct that his or her deposition be taken, and after the deposition is subscribed, that the witness be discharged.

Recognizing the need for a comprehensive plan governing the disposition of material witnesses in the Brownsville Division, and in order to effectuate the terms and purposes of 18 U.S.C. § 3144, the Court hereby enters the following Order:

1) IT IS HEREBY ORDERED that the United States Attorney shall furnish twice monthly to this Court, pursuant to Rule 46(g), Fed.R.Crim.P., a list of individuals incarcerated as material witnesses. The list shall contain the name of the defendant and the cause number, the name of the material witness, and the date his incarceration began.

2) Counsel who are appointed to represent material witnesses pursuant to 18 U.S.C. § 3006A(a)(1)(B), shall promptly attempt to secure the release of such individuals either by bond pending trial or otherwise pursuant to 18 U.S.C. § 3142 or by securing their testimony for trial by deposition. Failure of counsel to do so shall preclude compensation for services rendered.

3) A motion to take the deposition of a material witness can be filed by the witness, the defendant, or the United States Attorney. Said motion shall be referred to and disposed of by the United States Magistrate who is the duty magistrate in this Division on the day the motion is filed. The deposition shall be conducted within ten (10) days of the Magistrate's Order requiring it.

4) The deposition shall be recorded either stenographically or by videotape, or both. Unless all parties waive signature by the witness of the deposition, the court reporter shall prepare the transcript and deliver to the witness for his or her review as soon as possible, in any event no later than five (5) days after the date the deposition is taken. Once the deposition is subscribed, or if the signing is waived, the witness must be released within twenty-four (24) hours thereafter.

5) The duty Magistrate's Deputy Clerk shall be responsible for notifying all parties, including the United States Marshal and an interpreter, if necessary, of the deposition and for arranging the recording services. It is not necessary for the Magistrate to preside over the taking of the depositions as rulings on objections to testimony shall be made by this Court at time of trial.

6) If the material witness or the defendant is the moving party, the deposition costs shall be paid by the witness or the defendant, respectively, if he has retained counsel. In all other cases, deposition costs shall be paid by the United States Attorney.

7) No objection to the use of the deposition procedure in lieu of retention in custody of material witnesses for trial shall be entertained absent conclusive proof that the release of the witness, in a particular case, would result in a failure of justice. If such an objection is made by any party, it shall be in writing detailing the reasons why a failure of justice would result in that particular case. Said objection shall be presented to the United States Magistrate and heard by him before the taking of the deposition of that particular material witness.

8) The deposition procedure must be pursued unless further detention is necessary to prevent what is conclusively proven to be a failure of justice. A decision by the Magistrate to retain a material witness in custody pending trial is reviewable by this Court upon written motion by the witness. Similarly, a decision by the Magistrate denying an objection to the deposition procedure by any party is reviewable by this Court upon written motion.

9) In the absence of a District Court ruling that further detention is necessary, any material witness in custody shall be released by the Attorney General of the United States after forty-five (45) days of incarceration, without further notice to the parties. This Court will monitor the list of material witnesses to assure no one is retained in custody for more than forty-five (45) days.

It is so ORDERED.

DONE at Brownsville, Texas this 15th day of July, 1988.

/s/ Filemon B. Vela
FILEMON B. VELA
United States District Judge