Martin **TORRES–RUIZ;** Rafael
Machado–Triana,
Petitioners,

v.

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT
OF CALIFORNIA, Respondents.**

United States of America, Mariano
Rosales–Alvarez, Real Parties
in Interest.

No. 97–70719.

United States Court of Appeals,
Ninth Circuit.

Submitted to Motions Panel June 28, 1997.*

Decided July 3, 1997.

---

\* The panel finds this case appropriate for submission without oral argument pursuant to 9th    Cir.R. 34–4 and Fed.R.App.P. 34(a).

Terry Kilpatrick, Solano Beach, CA, for petitioners.

Bruce R. Castetter, Daniel E. Butcher, Assistant United States Attorneys, San Diego, CA, for United States of America, real party in interest.

Paula J. Notari, Federal Defenders of San Diego, San Diego, CA, for Mariano Rosales–Alvarez, real party in interest.

Before GOODWIN, SCHROEDER and TASHIMA, Circuit Judges.

PER CURIAM:

Petitioners Martin Torres–Ruiz and Rafael Machado–Triana have filed a petition for writ of mandamus requesting that this court order the district court to schedule the taking of their videotaped depositions under 18 U.S.C. § 3144. For the reasons stated below, the petition is granted.

## A. Factual Background [1]

On the afternoon of April 22, 1997, agents of the United States Border Patrol stopped a motorhome bearing California license plates near the Oak Grove checkpoint. The driver, defendant Mariano Rosales–Alvarez, admitted to the Border Patrol agents that he was a Mexican citizen who was not legally in the United States. Rosales–Alvarez and the passenger in the front passenger seat, who also admitted to being a Mexican citizen illegally in the United States, were taken into custody. A search of the motorhome revealed 27 other persons, all of whom admitted that they had crossed into this country at a place other than a legal border crossing. Of the 27 passengers in the back of the motorhome, all but two, petitioners Torres–Ruiz and Machado–Triana, were granted voluntary departure

to return to Mexico. Petitioners were detained as material witnesses.

After being informed of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Rosales–Alvarez gave border patrol agents a false name and claimed that he was simply another of the smuggled aliens who had been told he would not have to pay for his crossing if he drove the motorhome. Torres–Ruiz and Machado–Triana made sworn statements tending to implicate Rosales–Alvarez as a smuggler of undocumented aliens.

## B. Procedural Background

On April 22, 1997, petitioners were incarcerated as material witnesses to a crime pursuant to 8 U.S.C. § 1227(d). Petition for Write of Mandate ("Petition") at 2. On April 23, 1997, counsel Terry Kilpatrick, Esq., was appointed to represent petitioners. Declaration of Counsel in Support of Emergency Motion for Petition for Writ of Mandate ("Kilpatrick Declaration") at 1. On that same date, the district court set bail for the material witnesses at $1000.00. District Court Docket No. 2.

On May 20, 1997, after petitioners had been in custody for 28 days, counsel contacted the district court to request calendaring of a motion for the taking of a videotaped deposition of petitioners' testimony because petitioners could not locate a surety to help post their bail. Counsel was informed that the district court would not hear a separately calendared motion and that this motion would not be heard until June 16, 1997, the regularly calendared motion date for the underlying case. Kilpatrick Declaration at 3.

On May 29, 1997, counsel submitted pursuant to 18 U.S.C. § 3144 and Fed. R.Crim.P. 15 pleadings in support of petitioners' request for a videotaped deposition. Petitioners' Exhibits in Support of Emergency Motion and Writ of Mandate ("Petitioners' Exhibits"), Exh. B. Neither the government nor the defendant filed an opposition

---

**1.** This version of facts is taken from the "Statement of Facts" attached to the "Complaint for Violation" charging defendant and real party in interest Mariano Rosales–Alvarez with a violation of 8 U.S.C. § 1324(a)(1)(A)(ii), illegal transportation of aliens. Petitioners' Exhibits in Support of Emergency Motion and Writ of Mandate, Exh. A. Because no party to this action has disputed the facts as stated therein, we assume them to be true for purposes of our analysis.

to this motion. Indeed, the government filed a "Statement of Non Opposition to Material Witnesses' Notice of Motion and Motion to Take Videotape Depositions" along with a proposed order regulating the taking of the depositions. Petitioners' Exhibits, Exh. E.

On June 16, 1997, the district denied without permitting argument petitioners' motions for videotaped depositions. In support of this decision, the district court made the following factual findings:

Number one[,] the deposition is not reviewed by a judicial officer. Number two[,] it is not a confrontation proceeding where a judicial officer is present. Number three[,] it ... would become the trial testimony and there is no judicial officer there, available at the time to review and rule on any objections to the proceedings. And finally, the whole purpose why they were retained as material witnesses is because they didn't have legal rights to be here in the United States and they could have been charged with a crime. The Court does ... believe that for the effective administration of justice it is preferable to have them here available for the trial.

Petitioners' Exhibits, Exh. C.

On June 20, 1997, petitioners filed the instant Petition for Writ of Mandamus. The government filed an opposition on June 26, 1997, and petitioners reply was received on June 27, 1997. No other party filed an opposition in this matter.

## C. Discussion

■ Pursuant to 8 U.S.C. § 1227(d), deportation of a deportable alien may be stayed if in the judgment of the government "the testimony of such alien is necessary on behalf of the United States in the prosecution of offenders" against the alien smuggling laws. Furthermore, such a person may be detained in custody as a material witness in the criminal proceeding "if it is shown that it may become impracticable to secure the presence of the person by subpoena." 18 U.S.C. § 3144. However, "[n]o material witness may be detained because of inability to comply with any condition of release if the testi-mony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice." *Id.* Pursuant to Fed.R.Crim.P. 15, a material witness may make a motion requesting such a deposition and the district court has the authority to order the taking of the deposition and thereafter to discharge the detained witness from custody. Fed. R.Crim.P. 15(a). We agree with the reasoning of the Fifth Circuit, which held in *Aguilar–Ayala v. Ruiz,* 973 F.2d 411 (5th Cir. 1992), that:

Read together, Rule 15(a) and § 3144 provide a detained witness with a mechanism for securing his own release. He must file a "written motion," Fed.R.Crim.P. 15(a), requesting that he be deposed. The motion must demonstrate that his "testimony can adequately be secured by deposition," and that "further detention is not necessary to prevent a failure of justice." 18 U.S.C. § 3144. Upon such showing, the district court *must* order his deposition and prompt release. *Id.* ("No material witness may be detained" if he makes such a showing). Although Rule 15(a) is couched in the permissive "may," not the mandatory "shall," Fed.R.Crim.P. 15(a) ("the court ... *may* direct that the witness' deposition be taken"), it is clear from a conjunctive reading with § 3144 that the discretion to deny the motion is limited to those instances in which the deposition would not serve as an adequate substitute for the witness' live testimony: that a "failure of justice" would ensue were the witness released. *See* 18 U.S.C. § 3144. Absent a "failure of justice," the witness must be released.

*Aguilar–Ayala,* 973 F.2d at 413 (emphasis in original).

In the instant case, two young men, ages 19 and 22, have apparently been randomly selected out of a group of 27 undocumented aliens and detained for a period of over 60 days as material witnesses in a straightforward and uncomplicated alien smuggling prosecution. These young men state without opposition by either party to this case that they are the sole support for their respective families in Mexico, and that every day they

remain in custody is a tremendous hardship on those family members. Kilpatrick Declaration at 2. Neither petitioner is able to provide a surety for a $1,000.00 bond. It is exactly circumstances such as these for which section 3144 appears to be designed.

■ Nonetheless, the district court denied petitioners' motion for release, implicitly finding that further detention was necessary "to prevent a failure of justice." In support of this finding, the district court made four factual findings. Three of these findings depend upon the district court's expressed concern with the fact that no judicial officer would be present during the taking of the videotape depositions. The presence of a judicial officer at a deposition of a material witness is not a prerequisite for admissibility of such a deposition at trial. Section 1324 of Title 8 of the United States Code provides that "the videotaped (or otherwise audiovisually preserved) deposition of a witness to a violation of [the alien smuggling laws] who has been deported or otherwise expelled from the United States, or is otherwise unable to testify, may be admitted into evidence in an action brought for that violation if the witness was available for cross examination and the deposition otherwise complies with the Federal Rules of Evidence." There is no requirement under this statute or in the Federal Rules of Evidence that a judicial officer be present at the deposition. This court has previously held admissible in criminal trials videotaped depositions at which no judicial officer was present. *See, e.g., United States v. King,* 552 F.2d 833, 838–43 (9th Cir.1976) (holding admissible videotaped deposition testimony of unindicted co-conspirators imprisoned in Japan where defense counsel were present to cross-examine the deposed witnesses). As for the district court's concerns regarding the lack of a judicial officer's presence to review and rule on objections to the deposition proceedings, Fed.R.Crim.P. 15 provides for preservation of such objections by requiring that "[o]bjections to deposition testimony or evidence or parts thereof and the grounds for the objection shall be stated at the time of the taking of the deposition." Fed.R.Crim.P. 15(g).

The district court's last factual finding in support of its denial of petitioners' motion for videotaped depositions, that petitioners were not legally present in the United States and could have been charged with a crime, is simply not relevant to a determination on this issue. The entire deposition scheme discussed herein is designed precisely to address the situation of undocumented aliens held as material witnesses in cases of this nature. *See* 8 U.S.C. § 1227 (stay of deportation and detention of undocumented alien witnesses to alien smuggling offenses); 8 U.S.C. § 1324(d) (admissibility of deported alien's videotaped deposition testimony in alien smuggling cases); 18 U.S.C. § 3144 (release from custody of material witnesses whose testimony can be adequately preserved by deposition); Fed.R.Crim.P. 15(a), (f) (permitting detained material witnesses to move for taking of depositions and release from custody).

The continued detention of these material witnesses, whose testimony could be adequately preserved by videotaped deposition and whose families are suffering extreme hardship as a result of petitioners' continued detention, is an exceptional circumstance justifying the extraordinary remedy of mandamus. The district court's findings in support of the denial of the motion for videotaped depositions were clearly erroneous as a matter of law, relying as the district court did on factors not relevant to and not appropriately considered when ruling on such a motion. In addition, petitioners' undisputed statement that district courts vary widely in their practices regarding the granting of requests for videotaped depositions and that some courts refuse to grant such requests altogether, demonstrates the need for some direction by this court as to this issue. *See United States v. Harper,* 729 F.2d 1216, 1221–24 (9th Cir. 1984); *Bauman v. United States District Court,* 557 F.2d 650, 653 (9th Cir.1977).

**D. The Question of Mootness**

■ In their Answer to Petition for Writ of Mandamus ("Answer"), the government suggests that this case may be moot in light of their understanding that the defendant intended to enter a guilty plea on June 30,

1997, and that the proceedings may be over and the petitioners released before videotaped depositions could be scheduled and completed. Answer at 1, 5. The Court understands from the parties that the defendant has indeed agreed to plead guilty pursuant to a plea bargain. Nonetheless, it is unclear on what date the district court will accept any guilty plea, or even if it will accept the entry of a guilty plea. Furthermore, as stated by petitioners, there are potential issues at sentencing upon which petitioners may be called to testify. Their detentions could thus be extended for the not inconsiderable amount of time it may take between the date a change of plea is entered and the date of sentencing.

Accordingly, the issues addressed herein are not moot and **PETITIONERS' MOTION FOR WRIT OF MANDAMUS IS GRANTED.** The mandate shall issue forthwith.

The district court shall schedule videotape depositions of petitioners at the earliest possible date.