**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jorge GUADIAN–SALAZAR,**
**Defendant-Appellant.**

**No. 87–1059.**

United States Court of Appeals,
Fifth Circuit.

July 31, 1987.

M. Carolyn Fuentes, Asst. Federal Public Defender, San Antonio, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., Janet E. Bauerle, Richard H. Kamp, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before RANDALL, WILLIAMS and GARWOOD, Circuit Judges.

PER CURIAM:

Defendant appeals his conviction of illegal transportion of aliens, arguing that the district court committed reversible error in admitting videotaped deposition testimony of two government witnesses in contravention of his constitutional right to confront adverse witnesses. The United States agrees that the defendant's constitutional right was violated and also asks us to reverse the defendant's conviction. We reverse.

I.

In the evening of August 20, 1986, two border patrol agents responded to a sensor indicating that a vehicle was travelling north along a lightly trafficked road that was occasionally used for the illegal transportation of aliens. The agents noted that the vehicle appeared to be heavily loaded and was registered to an area of Texas that was often the destination of transporters of illegal aliens. The agents stopped the car, and observed that, in addition to the two occupants visible from the roadside, there were a number of individuals crouched on the front and rear floorboards of the vehicle. After a brief interrogation, the agents determined that the vehicle's occupants were Mexican nationals illegally in the United States. After advising the aliens of their constitutional rights, the agents transported the car and its occupants to a nearby border patrol station for further interrogation. The information gathered in the interrogation led to the indictment of the driver of the car, defendant Jorge Guadian-Salazar, on three counts of illegal transportation of aliens in violation of 8 U.S.C. § 1324(a)(2).

Two days after the defendant's August 20 arrest, a United States magistrate set a September 3, 1986, date for the deposing of material witnesses. These depositions were scheduled pursuant to a standing order, dated June 2, 1986, and issued by three judges of the United States District Court for the Western District of Texas, that, in general, requires alien material witnesses to be deposed and released within sixty days of the date of their detention. The standing order further provides that "[n]o objection to the use of the deposition procedure in lieu of retention in custody of material witnesses for trial shall be entertained absent proof that the release of the witness, in a particular case, would result in a failure of justice." Both the defendant and the government filed extensive objections to the deposing of material witnesses in Guadian-Salazar's case. Subsequently, the court appointed counsel for the alien witnesses, and counsel shortly thereafter filed a motion for the reduction of bond or for taking oral depositions. A magistrate rapidly granted the motion, and ordered the depositions to be taken on September 23, 1986. The defendant and the government renewed their objections to the taking of depositions.

By an amended order dated September 22, the court rejected the objections of the government and the defendant. The district court ruled as follows:

Having considered the objections and the witnesses' original application for the setting of depositions, the Court finds that this case presents "exceptional circumstances" and that "the interests of justice" requires [sic] the taking of depositions. Federal Rule of Criminal Procedure 15(a). The Court further finds that there will be no failure of justice if the material witnesses are released after their depositions are taken and certified. 18 U.S.C. § 3144.

*United States v. Guadian-Salazar,* No. DR–86–CR–53 (W.D.Tex. Sept. 24, 1986) (order amending order of Sept. 19, 1986).

The depositions were videotaped and later tendered for presentation at trial. The defense objected on constitutional, statutory, and procedural grounds. In response, the government presented testimony by the preparer of the videotaped depositions in order to establish the chain of custody. The court overruled the objections.

In the videotaped depositions, one witness denied making any specific monetary arrangements with the defendant in exchange for the services the defendant provided, and the other witness denied discussing money with the defendant at all. On cross-examination, both witnesses indicated that they had lied about payment details in prior statements because they were frightened by an immigration officer.

After the deposition tapes were played, the government presented the testimony of United States Border Patrol Agent Williams—the sole "live" witness presented at trial—to establish, *inter alia,* the unavailability of the two alien witnesses. Williams testified that, pursuant to the court's order, he had taken the witnesses to the Mexican border after they had signed their depositions.[1] At the border, the agent served the witnesses with subpoenas, printed in English only, and a notice stating, in English and in Spanish, "[i]n the event that your testimony is needed in the case of United States versus Jorge Guadi-an-Salazar, the United States Immigration Service will make provisions for you to legally enter the United States and to remain until the case is terminated." Agent Williams further instructed the witnesses that they were to come to the port of entry on October 20, 1986, and were to contact himself or another agent on that date. To Williams' knowledge, however, no such contact was made. On cross-examination, Williams acknowledged that the witnesses' home of record was Guanajuato, a city several hundred miles into the interior of Mexico, and that the government had not advanced the witnesses any travel funds to enable them to return. Williams further stated that he had not awaited the witnesses at the port of entry on October 20th, nor had he or any other agent made an effort to contact the witnesses in the intervening month before trial. The defense renewed its objections to the admission of the depositions, but the district court again overruled the objections.

The jury returned a verdict of guilty on count three of the indictment, the only count before it.[2] The defendant was sentenced to three years' imprisonment and ordered to pay a special assessment of fifty dollars. This appeal followed.

On appeal, the defendant argues that the government's presentation of its case by videotaped deposition testimony violated his constitutional right to confront adverse witnesses, guaranteed by the sixth amendment, thereby depriving him of due process of law under the fifth amendment to the United States Constitution. The defendant asserts that the use of deposition testimony in his case violated the confrontation clause because the government did not establish the unavailability of the witnesses—indeed, the government virtually assured the witnesses' absence by releasing them at the Mexican border, providing them with ambiguous instructions, and failing to provide them with the wherewithal to return to the

---

1. We note that while the district court's order does mandate that the witnesses be released after signing their depositions, it says nothing of releasing those witnesses beyond the borders of the United States.

2. The district court dismissed counts one and two upon motion of the government.

United States to testify. Because of the crucial inconsistency between the witnesses' earlier statement and their deposition testimony, and because their testimony was vital to the government's case, the deprivation of his right to confront the witnesses before the jury was fatally prejudicial in this case. The defendant further argues that the taking of depositions in this case violated Federal Rule of Criminal Procedure 15 because no exceptional circumstances were demonstrated to justify taking the depositions. The defendant also attacks the taking of depositions only twenty-seven days after his first appearance through counsel as a violation of the Speedy Trial Act, argues that the depositions were inadmissible because special procedures required for the taking and preservation of non-stenographic depositions were not followed in the instant case, and asserts that the government failed to establish an element of the offense because the testimony used to establish that element was inadmissible hearsay.

The government candidly agrees that the depositions it introduced at trial were inadmissible. The government asserts that, because the district court's standing order on the deposing of material witnesses contributed to the unavailability of the witnesses, the admission into evidence of the depositions offended the sixth amendment's confrontation clause. The government notes that there were no "exceptional circumstances" sufficient under rule 15 to justify deposing the witnesses. The government further asserts that the district court ordered the depositions pursuant to the mandate of the standing order, and therefore exercised no discretion with respect to the instant case. The government concludes that the defendant's conviction should be reversed.

## II.

As noted above, both the government and the defendant argue that the use of deposition testimony in this case deprived defendant of his constitutional right to confront adverse witnesses, and that in the circumstances of this case such deprivation worked to the actual prejudice of the defense. Having carefully examined the record on appeal and the relevant authorities, we accept the government's concession of error. We therefore reverse the conviction of the defendant.

The government further asks us to rule upon the validity of the standing order pertaining to material witnesses entered by the United States District Court for the Western District of Texas pursuant to the judgment in *In re Class Action Application for Habeas Corpus ex rel. All Material Witnesses in the Western District of Texas,* 612 F.Supp. 940 (W.D.Tex.1985). We decline to do so in this case, for a number of reasons.

First, while the briefs on this appeal may be adequate to the disposition of this case under the circumstances, they fail to address certain questions important to the reasoned resolution of this complex issue, such as the following:

(1) Both parties argue that alternatives to extended detention of the witnesses, such as "paroling" the witnesses into the community pursuant to the immigration laws, or expediting the trial, are available to and should be considered by the judicial officer upon the motion of a material witness or party. Yet neither party discusses such alternatives within the framework of 18 U.S.C. § 3142, a comprehensive procedural provision enacted by Congress to guide judicial officers in considering the conditional release of a defendant pending trial—a provision that, further, appears to control the conditional release or continued detention of material witnesses. *See* 18 U.S.C. § 3144 ("If it appears ... that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person *and treat the person in accordance with the provisions of section 3142 of this title.'')* (emphasis added); *see also In re Class Action Application ex rel. Material Witnesses,* 612 F.Supp. at 942–43 (noting that "[s]ection 3144 unambiguously provides that mate-

rial witnesses are to be treated in accordance with Title 18, United States Code, Section 3142," and analyzing material witnesses' right to counsel claim in light of procedures of section 3142). Other provisions of section 3142 may also be relevant to the detention of material witnesses, yet neither party even mentions section 3142 in its brief.

(2) Although the government has assured this court that its brief represents the position of the United States Immigration and Naturalization Service as well as that of the Justice Department, the brief does not address the impact of the immigration laws upon the alternatives to continued detention suggested by the parties. Clearly, the extent to which the Immigration Service is legally empowered and willing to cooperate with the parties and the material witnesses in administering the respective alternatives suggested by them bears heavily on the viability of those alternatives. The importance of a comprehensive understanding of the immigration laws in this context is illustrated by the following. The government takes the position that the standing order leaves it no choice but to deport or otherwise release alien material witnesses beyond the borders of the United States, thereby forcing it to contribute to the witnesses' later unavailability. Yet relevant agency regulations mandate that no alien material witness shall depart, or attempt to depart, from the United States unless the prosecuting authority consents to his departure. *See* 8 C.F.R. § 215.2(a) (1987) ("No alien shall depart, or attempt to depart, from the United States if his departure would be prejudicial to the interests of the United States under the provisions of § 215.3"); *id.* § 215.3(g) ("Any alien who is needed in the United States as a witness in, or as a party to, any criminal case under investigation or pending in the United States: *Provided,* That any alien who is a witness in … any criminal case … may be permitted to depart from the United States with the consent of the appropriate prosecuting authority"); 22 C.F.R. § 46.2(a) (1987) (same as 8 C.F.R. § 215.-2(a)); *id.* § 46.3(g) (same as 8 C.F.R.

§ 215.3(g)). Neither party has mentioned such regulations.

(3) Neither party refers to or cites Judge Sessions' careful analysis in *In re Class Application ex rel. Material Witnesses* of the competing constitutional interests of the material witnesses and the government—interests that necessarily must color the judicial officer's decision to detain or release the witnesses. 612 F.Supp. at 944–47.

We are also concerned that the district court may not have been presented with a thorough analysis of the legal framework in which to decide the contentions of the parties and the material witnesses. Further bearing on the prudence of issuing an opinion addressing the standing order as applied here is the fact that at this juncture in this case, counsel for the material witnesses is no longer involved and the government and the defense are in agreement as to the result that should be reached in this case. For the above reasons, and because addressing the validity of the standing order is not essential to our decision in this case, we decline to address the broader issues urged by the government on this appeal.

### III.

The conviction of the defendant is REVERSED.