UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————

No. 92-5516

————————


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEPHEN ROSS ALLIE,

Defendant-Appellant.

————————

Appeal from the United States District Court
for the Western District of Texas

————————

(November 25, 1992)


Before GOLDBERG, SMITH and EMILIO M. GARZA, Circuit Judges.

GOLDBERG, Circuit Judge:

Stephen Ross Allie appeals his conviction for harboring illegal aliens. Allie contends that the district court erred by permitting the government to depose the illegal aliens and by admitting the depositions into evidence. Allie also argues that the court below erred by admitting hearsay statements into evidence and by misinstructing the jury. We affirm.

1

Facts and District Court Proceedings

On April 17, 1991, Immigration and Naturalization Service ("INS") agents searched Allie's residence and found three Mexican citizens, Reyes Sifuentes-Espinoza, Alfonso Lares-Arevalo and Juan Francisco Lares-Mongaray, working and living on Allie's property. As the men did not possess documents permitting them to be in the United States, a criminal complaint was filed against Allie for harboring illegal aliens.

The government requested that the three aliens be detained as material witnesses pursuant to 18 U.S.C. § 3144.[1] Unable to post the $25,000 bond set as a condition for their release, the witnesses were incarcerated.

On June 10, 1991, fifty-four days into the alien witnesses' incarceration, the government filed a motion to extend the detention of the witnesses or alternatively for permission to depose them. The government's motion was prompted by the Western District's standing order[2], which mandates the release of detained witnesses after sixty days of incarceration unless further detention is necessary to prevent "a failure of justice." The sixtieth day of the alien witnesses' detention would have occurred

---

[1] Section 3144 provides in relevant part:
If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142.

[2] In Re Material Witnesses, entered on June 2, 1986.

ten days before the trial, set for June 24, 1991. The Magistrate denied the government's request to extend the detention of the alien witnesses but permitted the government to depose the witnesses. The depositions were videotaped and transcribed on June 18, 1991.

After being deposed, the witnesses were released with a subpoena to appear at Allie's trial, which had been rescheduled for July 22, 1991. The alien witnesses were given the option of remaining in the United States with a work permit pending trial, or returning to Mexico. All three witnesses chose to return to Mexico but stated that they would return to the United States to testify at Allie's trial. The witnesses were apprised of reentry procedures into the United States and given letters to be presented at the United States inspection station on the Mexican border to aid their reentry. The aliens were told that the government would pay them a witness fee for testifying as well as reimburse them for their travel expenses.

On June 20, 1991, the witnesses appeared before an immigration judge for their deportation hearing. At the hearing, the witnesses again gave their assurances that they would return for Allie's trial. The witnesses were again given reentry instructions and told about the witness fees and the travel reimbursements.

INS agent Andrade instructed the witnesses to meet him at a specified port of entry on July 19, 1991. Andrade recorded the witnesses' addresses and telephone numbers in Mexico. After the aliens returned to Mexico, agent Andrade called the witnesses

3

several times to confirm that the witnesses would return as promised and to verify the date, time and place of reentry. Although Andrade was unable to contact Reyes Sifuentes-Espinoza, he did contact Alfonso Lares-Arevalo and Juan Francisco Lares-Mongaray. Both men promised to return to testify and to contact Reyes Sifuentes-Espinoza about returning with them. Andrade arranged for checks to be issued to the aliens upon their arrival at the border. Andrade also contacted the authorities at the designated port of entry to apprise the inspectors of the expected arrival of the aliens.

Despite the government's efforts, the alien witnesses did not show up. Allie filed a pretrial motion to preclude the government from introducing the depositions of the alien witnesses at trial. The district court denied Allie's motion, finding that the witnesses were "unavailable" and that the government made a good faith effort to procure their presence at trial.

At trial, the videotaped depositions of the three aliens were admitted over Allie's renewed objections. Also over Allie's hearsay objection, the government played a videotape made during the search of Allie's property, showing one of the aliens indicating that he slept in Allie's garage.

The jury, after deliberating for several hours, sent a note to the judge asking what Allie's duties were as an employer hiring alien laborers. Over Allie's objection, the court issued a supplemental instruction answering the jury's question. The jury returned a verdict of guilty on all counts.

On appeal we face two questions concerning the depositions of the alien witnesses. The first is whether it was appropriate to permit the government to take the depositions. The second is whether the depositions were properly admitted into evidence at trial. The remaining questions concern the alleged hearsay violation and the supplemental instruction to the jury.

## Rule 15(a) and §3144

Allie challenges the district court's decision permitting the government to depose the alien witnesses. The permissibility of deposing witnesses in a criminal trial is generally governed by Fed. R. Crim. P. 15(a). Rule 15(a) provides:

> Whenever due to _exceptional circumstances_ of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that the testimony of such witness be taken by deposition . . . If a witness is detained pursuant to section 3144 of Title 18, United States Code, the court on written _motion of the witness_ and upon notice to the parties may direct that his deposition be taken. After the deposition has been subscribed the court may discharge the witness. (emphasis added)

Allie contends that no "exceptional circumstances," as required by Fed. Crim. P. 15(a), existed in this case to justify deposing the alien witnesses. Before addressing Allie's argument, we must first consider the government's suggestion that no "exceptional circumstances" need be established before deposing a detained witness. The government relies on 18 U.S.C. § 3144, which requires that detained material witnesses be deposed "within a

5

reasonable period of time" if "further detention is not necessary to prevent a failure of justice."[3]

The government's argument is facially supported by the fact that § 3144 does not state that a showing of "exceptional circumstances" is required.  However, in light of Rule 15(a), the government's position is plausible only if § 3144 is interpreted as modifying Rule 15(a)'s "exceptional circumstances" requirement by establishing that the detention of a witness constitutes a per se exceptional circumstance.

This interpretation of Rule 15(a) and § 3144 is not tenable. Rule 15(a) plainly establishes that § 3144 modifies its "exceptional circumstances" requirement with regard to motions for depositions made by detained witnesses.[4]  However, Rule 15(a)'s explicit and limited reference to depositions taken pursuant to a motion of a detained witness indicates that a motion for the deposition of a detained witness made by a party (either the

---

[3]  Section 3144 provides in relevant part:
No material witness may be detained because of
inability to comply with any condition of release if
the testimony of such witness can adequately be secured
by deposition, and if further detention is not
necessary to prevent a failure of justice.  Release of
a material witness may be delayed for a reasonable
period of time until the deposition of the witnesses
can be taken pursuant to the Federal Rules of Criminal
Procedure.

[4]  In Aguilar-Ayala v. Ruiz, Slip No. 91-2848, 7296 (Sept. 25, 1992), we explained that "[r]ead together, Rule 15(a) and § 3144 provide a detained witness with a mechanism for securing his own release."  Material witnesses "detained under § 3144 are explicitly excepted from demonstrating exceptional circumstances to effectuate their own depositions." Id. at 7305, n.6.

6

government or the defendant) is subject to Rule 15(a)'s "exceptional circumstances" requirement. Because the government, as opposed to the witnesses, requested the depositions of the detained witnesses in the instant case, Rule 15(a) requires that the government establish exceptional circumstances warranting the depositions.

The district court held that exceptional circumstances existed in this case because the Western District's standing order mandated the release of the detained witnesses before the date of Allie's trial. The district court's finding of exceptional circumstances was supported by additional factors such as the aliens' illegal presence in the United States, their lack of ties to San Antonio, and the government's inability to make its case against Allie without their testimony.

We review the trial court's Rule 15(a) findings of exceptional circumstances only for abuse of discretion. United States v. Farfan-Carreon, 935 F.2d 678, 679 (5th Cir. 1991). See also United States v. Fuentes-Galdino, 929 F.2d 1507, 1509 (10th Cir. 1991). The district court has "broad discretion in granting rule 15(a) motions, and in considering the particular characteristics of the case to determine whether the 'exceptional circumstances' requirement has been met." United States v. Farfan-Carreon, 935 F.2d at 679. See also United States v. Bello, 532 F.2d 422, 423 (5th Cir. 1976).

The district court did not abuse its discretion in finding that "exceptional circumstances" exist in this case. The trial

7

court's holding is consistent with our decision in U.S. v. Farfan-Carreon, 935 F.2d at 679-680. In Farfan-Carreon we found "exceptional circumstances" when an alien witness was unlikely to return to the United States from Mexico to testify at the defendant's trial. Similarly, in the case before us, the fact that the witnesses would be released in compliance with the Western District's standing order, and the indications that they were likely to return to Mexico, constituted exceptional circumstances.

Allie argues that the Western District's standing order is invalid and thus the district court's reliance on the standing order to find exceptional circumstances is misplaced. Allie maintains that the standing order is violative of Rule 15(a) and the Due Process clause because it deprives a defendant of an individualized judicial determination regarding the appropriateness of a deposition in the particular case.

Contrary to Allie's argument, the Western District's standing order merely implements 18 U.S.C. § 3144. The order provides that upon a motion,

> [t]he deposition procedure [for detained witnesses] must be pursued unless further detention is necessary to prevent a failure of justice . . . In the absence of a District Court ruling that further detention is necessary, any material witness in custody shall be released by the Attorney General of the United States after Sixty days of incarceration . . ." (emphasis added)

The standing order's time limitation gives meaning to the § 3144 requirement that depositions of detained witnesses be taken within a "reasonable period of time." The Western District's standing order defines "reasonable time" as sixty days. Except for

8

the time limitation, the standing order provides the trial court with essentially the same degree of discretion in the resolution of individual cases as § 3144, i.e., determining whether a failure of justice would result if the depositions were taken and the witnesses released.

We recently noted in Aguilar-Ayala v. Ruiz, Slip No. 91-2848 (Sept 25, 1992), in discussing the Southern District's standing order which was modeled after the standing order at issue in this case, that the "district court order established a procedural framework for implementing [§ 3144]. Other than commanding that the material witnesses be released after forty-five days and specifying certain time limitations, the district court's standing order . . . tracked the requirements of § 3144 and Rule 15(a)." Id at 7299.

We hold that the Western District's standing order is a valid implementation of § 3144 and that the trial court did not abuse it discretion in finding "exceptional circumstances" warranting the taking of the depositions.


The Confrontation Clause

Allie argues that the trial court erred by admitting the deposition testimony of the three alien witnesses into evidence because the introduction of the depositions violated his Sixth Amendment right to confront his accusers at trial.

The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right .

9

. . to be confronted with the witnesses against him."  The Supreme Court explained in <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980), that the Confrontation Clause envisions:

> a personal examination and cross examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. <u>Id</u>. at 63-64 (quoting <u>Mattox v. United States</u>, 156 U.S. 237, 242 (1895).

The Court, however, has recognized that the right to confrontation is not absolute and that some circumstances justify dispensing with confrontation at trial.  Out of court statements, like the depositions at issue in this case, may be introduced against a criminal defendant if the government can "demonstrate the unavailability of the declarant whose statements it wishes to use," and that the out of court statements bear adequate "indicia of reliability."  <u>Roberts</u>, 448 U.S. at 65-66.  As the reliability of the alien witnesses' depositions is not contested, we need only address the "unavailability" of the witnesses.

A witness is "unavailable" for Confrontation Clause purposes if the "prosecutorial authorities have made a <u>good-faith effort</u> to obtain his presence at trial." <u>Id</u>. at 74 (emphasis in original) (quoting <u>Barber v. Page</u>, 390 U.S. 719, 724-725 (1968)).[5]

_____

[5] The Confrontation Clause's requirement of unavailability is the same requirement embodied in Fed. R. Crim. P. 15(e), governing the use of depositions at criminal trials. <u>United States v. Martinez-Perez</u>, 916 F.2d 1020, 1023 (5th Cir. 1990). <u>See</u> <u>also United States v. Kehm</u>, 799 F.2d 354, 360 (7th Cir. 1986).  Thus, cases discussing "unavailability" under Rule 15(e) are applicable to the instant analysis.

Attempting to elaborate on the "good faith" standard, the Roberts Court suggested that "[t]he length[] to which the prosecution must go to produce a witness . . . is a question of reasonableness." Id. at 74 (quoting California v. Green, 399 U.S. 149, 189 n. 22 (1970)). See also Aquilar-Ayala v. Ruiz, Slip No. 91-2848, 7302 (Sept 25, 1992) ("deposition testimony is admissible only if the government has exhausted reasonable efforts to assure that the witness will attend trial"). The inevitable question of precisely how much effort is required on the part of the government to reach the level of a "good faith" and "reasonable" effort eludes absolute resolution applicable to all cases.

In United States v. Martinez-Perez, 916 F.2d 1020 (5th Cir. 1990), we applied the Roberts "good faith" standard in reversing the conviction of a defendant who had been convicted on the basis of deposition testimony. We held that the government did not demonstrate a good faith effort because "[t]he government adduced no evidence that the [witness] was unavailable to testify at trial; it introduced no evidence of any efforts to procure [the witness'] presence; [and] the district court made no finding on the record that [the witness] was in fact was unavailable." Id. at 1023.

Similarly, in United States v. Guadian-Salazar, 824 F.2d 344 (5th Cir. 1987), we reversed a conviction obtained with deposition testimony of alien witnesses, finding that the witnesses were not "unavailable." Prior to being returned to Mexico, the alien witnesses were given subpoenas written in English only, and notices in English and Spanish informing the aliens that the INS

11

would make provisions for them to reenter the United States. An INS agent instructed the aliens to come to a specified port of entry on a specified date. However, no attempt was made to contact the witnesses in Mexico in the intervening months before trial, and no one awaited the witnesses at the port of entry on the designated date. Id. at 346. Under these facts we accepted the government's concession that the depositions introduced at trial were inadmissible. Id. at 347.

The government's effort in obtaining the witnesses' attendance at trial in the instant case is significantly greater than the effort exhibited by the government in Guadian-Salazar and in Martinez Perez. The government's efforts in this case, as described earlier, included giving the witnesses the option of remaining in the United States with work permits, telling the witnesses about the payment of witness fees and travel cost reimbursement, giving the witnesses a subpoena and a letter to facilitate their reentry into the United States, calling the witnesses in Mexico, getting the witnesses' repeated assurances that they would return, apprising the border inspectors of the witnesses' expected arrival and issuing checks to be given to the witnesses upon their reentry in to the United States.

The fact that the witnesses did not ultimately show up does not diminish the government's considerable effort. In Aquilar-Ayala v. Ruiz, Slip No. 91-2848 (Sept 25, 1992), we noted that "[t]he ultimate success or failure of [the government's] efforts is not dispositive. So long as the government has employed reasonable

measures to secure the witness' presence at trial, the fact that the witness has nevertheless failed to appear will not preclude the admission of deposition testimony.  Such a witness will be deemed unavailable." Id. at 7302-3.  See also United States v. Eufracio-Torres, 890 F.2d 266, 270 (10th Cir. 1989), cert. denied, 494 U.S. 1008 (1990) ("The fact that the means utilized were unsuccessful does not mean that the government's efforts were not made in good faith").  Given the government's efforts in this case, we hold that the trial court did not err in finding that the government exhibited a good faith effort in attempting to obtain the witnesses' presence at trial.

Allie argues that the government's efforts were not in good faith because the government contributed to the aliens' unavailability.  According to Allie, the government encouraged the witnesses' unavailability by offering them the option of leaving the United States.  Allie emphasizes that the government had means at its disposal to keep the alien witnesses from leaving the United States, citing the administrative controls available to the INS under 8 C.F.R. §§ 215.2(a)-(b) and 215.3(g).[6]

Allie principally relies on the First Circuit's decision in United States v. Mann, 590 F.2d 361 (1st Cir. 1978), in which the

---

[6]  Section 215.2(a) states that "[n]o alien shall depart, or attempt to depart, from the United States if his departure would be prejudicial to the interests of the United States.  Matters "prejudicial to the interests of the United States" are defined in § 215.3(g) to include "[a]ny alien who is needed in the United States as a witness in, or as a party to, any criminal case" unless the alien has the "consent of the appropriate prosecuting authority."

13

court held that the admission of a deposition of a witness permitted by the government to leave the United States violated the Confrontation Clause. The Mann court explained that implicit "in the duty to use reasonable means to procure the presence of an absent witness is the duty to use reasonable means to prevent a witness from becoming absent." Id. at 368.

We agree with the Mann court that the government's good faith efforts to assure the witnesses' availability at trial should include efforts aimed at keeping the witnesses in the United States. In the instant case, the government attempted to keep the witnesses in the United States by offering them work permits. Although such efforts are important, we refuse to adopt a per se rule, as suggested by Allie, precluding a finding of good faith unless the government attempts to coercively detain the witnesses in the United States.

The Tenth Circuit's decision in United States v. Eufracio-Torres, 890 F.2d 266 (10th Cir. 1989), upholding the admission of deposition testimony of aliens permitted to leave the country, is instructive. Like Allie, the defendant in Eufracio-Torres argued that the government did not act in good faith because it permitted the alien witnesses to leave the United States. The court rejected the defendant's argument, explaining: "What the government did not do, and what [the defendant] urges should be a precondition to the finding of unavailability, is to ask the trial court to impose executive restraints on the witnesses to keep them in this country to testify before being deported by the INS." Id. at 217. The

14

court refused to adopt this "precondition" and held that the governments' actions were "reasonable" and in "good faith" despite permitting the witnesses to depart. Id. See also United States v. Rivera, 859 F.2d 1204, 1207-1208 (4th Cir. 1988), cert denied, 490 U.S. 1020 (1989) (holding that "the illegal alien witnesses, who had been deposed and had left the country rather than awaiting deportation were unavailable," and that the government was "reasonable" in its effort to produce the witnesses).

There is no doubt that a "[t]rial by deposition steps hard on the right of criminal defendants to confront their accusers." Aguilar-Ayala v. Ruiz, Slip No. 91-2848, 7303 (Sept 25, 1992). Because of the importance our constitutional tradition attaches to a defendant's right to confrontation, the "good faith effort" requirement demands much more than a merely perfunctory effort by the government. Under the facts of this case, we agree with the district court that the efforts made by the government to obtain the attendance of the alien witnesses at Allie's trial were reasonable and in good faith.[7]

---

[7] Allie also alleges that his Fifth Amendment Due Process rights were violated by the introduction of the depositions. The right to confront adverse witnesses has been recognized as an essential component of due process of law. Chambers v. Mississippi, 410 U.S. 284, 294 (1973). Allie argues that Due Process was violated because, absent a showing of unavailability, there was no legitimate government interest in using the depositions at trial. As we hold that the government did establish the witnesses' unavailability, Allie's argument fails.

## The hearsay claim

Allie argues that the district court erred by admitting into evidence a silent videotape showing one of the alien witnesses getting into and out of a bed in Allie's garage. Allie claims that the tape constituted inadmissible hearsay.[8]

The trial court allowed the videotape into evidence, over Allie's objection, under the catch-all hearsay exception, Fed. R. of Evid. 803(24). In finding that the videotape was admissible under Rule 803(24) the trial court had to determine that (a) the statement was of a material fact, (b) the statement was more probative on the point for which it was offered than any other evidence which the proponent could procure through reasonable efforts, and (c) the general purposes of the rules and the interests of justice were best served by admission of the statement into evidence.

We review the district court's evidentiary rulings under an abuse of discretion standard. <u>United States v. Lopez</u>, 873 F.2d 769, 771 (5th Cir. 1989). Allie does not argue, and nothing in the record indicates, that the court's ruling constituted abuse of discretion. Even if we were to find abuse of discretion, the admission of the videotape would be a harmless error. The government introduced the videotape to establish the fact that Allie harbored the aliens in his house. However, in addition to the videotape, the government introduced the deposition testimony

---

[8] Under Fed. R. of Evid. 801(a)(2), assertive conduct may be hearsay if introduced for the truth of the matter asserted.

16

of two aliens testifying that they lived in Allie's garage.[9]  Given this testimony, the videotape was merely cumulative evidence and its introduction constitutes harmless error.  "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."  Fed. R. of Evid. 103(a). See Foster v. Ford Motor Co., 621 F.2d 715, 721 (5th Cir. 1980).

The supplemental instructions

After several hours of deliberations, the jury sent a note to the court, asking: "Is it possible to find out what Mr. Allie's responsibilities were when seeking alien laborers to work on his place?  What does the law expect?"  Even though Allie was not charged with improper hiring, the judge provided a supplemental instruction regarding an employer's obligation when hiring aliens. Allie claims that the supplementary instructions misled the jury as to the legal issues before them.

"A determination of the prejudicial nature of a supplemental charge can only be made after reviewing both the original and supplemental charges as a whole.  (citation omitted) Reversible error does not occur so long as the combined charges viewed as a whole accurately reflect the legal issues."  United States v. Taylor, 680 F.2d 378, 381 (5th Cir. 1982).

---

[9] Q: Where did you live while you were working on the charcoal piles? Juan Francisco Lares-Mongaray: In a garage that he had there . . .
    Q: While you were working there those seven days, where did you live? Reyes Sifuentes-Espinoza: Right there in the garage.

17

The instructions in this case, read as a whole, accurately reflected the legal issues involved. Although in responding to the jury's question the supplemental instructions addressed a legal question not before the jury, the possibility of confusing the jury was precluded by the supplemental instruction's restatement of the elements of the offense as set forth in the original instructions. The supplemental instructions emphasized that "the defendant is not on trial for any act, conduct, or offense not alleged in the indictment." The supplemental instructions also reminded the jury that "you are here to decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crimes charged." We hold that the district court's instructions did not mislead the jury.

## Conclusion

For the foregoing reasons the judgment below is AFFIRMED.