**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 01-50847
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

ANTONIO AGUILAR-TAMAYO,

Defendant - Appellant.

Appeal from the United States District Court
for the Western District of Texas

July 25, 2002

Before DAVIS, DeMOSS and STEWART, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant Antonio Aguilar-Tamayo appeals his conviction by a jury of two counts of illegal alien transportation and two counts of bringing an alien into the United States, both in violation of 8 U.S.C. § 1324. He challenges, as a violation of the Confrontation Clause, the district court's decision to admit the video deposition testimony of witnesses who were not available to testify at trial because they had been deported. Because we conclude that any error in this practice was harmless based on the overwhelming evidence of Aguilar-Tamayo's guilt, we affirm.

I.

At trial before a jury, evidence was presented that in the early morning of February 21, 2001, United States Border Patrol

Agent David Mitchell was alerted that a sensor had been activated on a trail often followed by aliens. Agent Mitchell testified that it was a very dark night. He and another agent proceeded to a point on the trail to attempt to intercept the individuals triggering the sensor. Mitchell and one agent traveled in one vehicle. Agent Goodwin arrived separately later. Both vehicles used their headlights which could have been observed by individuals on the trail.

The agents reached a point where they thought they would intercept the individuals, but after a time, decided to walk up the road towards the expected direction of their travel. About 3:00 a.m., the agents observed a group of suspected aliens approaching. The agents crouched behind a ranch gate that was closed blocking the road. Agent Mitchell testified that he observed the first person in the group, whom he identified as the defendant, trying to open the gate. Aguilar-Tamayo spoke to the other aliens as he was unlocking the gate. Agent Mitchell heard him tell them that there were lights coming from the direction they were going. The agent also heard Aguilar-Tamayo warn the group that border patrol had been in that area before. Agent Mitchell testified that he could tell Aguilar-Tamayo was leading the group from the way he was talking and using hand-signals to guide the group. He also testified that based on his observations, it was clear that Aguilar-Tamayo was in charge of the group. The group of suspected

2

aliens consisted of seventeen individuals. Because of the size of the group, the agents radioed for assistance in apprehending them and followed the group. Aguilar-Tamayo maintained the position in the front of the group during the entire time the agents conducted surveillance. The group was apprehended and all were found to be aliens who had illegally entered this country.

Agent Mitchell testified that he observed Aguilar-Tamayo being read his constitutional rights in Spanish by Agent Banda and having those rights, including the right to counsel, explained to him. Aguilar-Tamayo indicated that he understood his rights. Aguilar-Tamayo was interviewed by a Spanish-speaking agent in Spanish. Aguilar-Tamayo confessed that he guided the group of aliens to the United States in exchange for $750 each, because he wanted to make some extra money. His intention was to guide the group on foot to Leakey, Texas. Aguilar-Tamayo was given the opportunity to review his written statement and was again advised of his rights. He re-read the statement and was given the opportunity to edit his responses. Aguilar-Tamayo signed the statement in the presence of Agent Cruz and another witness. Agent Cruz testified that the defendant did so voluntarily and that there had been no threats or use of force.

At trial, the prosecution also produced, over Aguilar-Tamayo's objection, the videotaped depositions of two material witnesses who were part of the group of aliens intercepted that night. The

3

depositions were conducted with the witnesses under oath, before a U.S. magistrate judge, and with the participation of both Aguilar-Tamayo and his attorney. These witnesses testified that Aguilar-Tamayo charged them $800 each to lead them into the United States. After their depositions, the witnesses were deported to Mexico.

Aguilar-Tamayo also testified at the trial. He asserted that he was not the leader and that no one paid him or promised to pay him for showing them the way into the United States. He disputed telling the agents that he was charging the aliens. A jury convicted Aguilar-Tamayo of all counts. Aguilar-Tamayo appeals.

II.

Aguilar-Tamayo argues that the introduction of the videotaped material witness testimony violates his rights under the confrontation clause of the Sixth Amendment because the government failed to show that the witnesses were unavailable for trial. He argues further that he was damaged by the admission of this testimony. Alternatively, he argues that 8 U.S.C. § 1324 is unconstitutional. Whether hearsay evidence was properly admitted is reviewed under the abuse of discretion standard. A constitutional challenge is reviewed *de novo*.

The challenged material witness depositions were offered under the authority of Section 1324(d) of Title 8 which provides:

> [N]otwithstanding any provision of the Federal Rules of Evidence, the videotaped . . . deposition of a witness . . . who has been deported or otherwise expelled from the United States, or is otherwise unable to testify, may be

4

admitted into evidence in an action brought for [transporting illegal aliens] if the witness was available for cross-examination and the deposition otherwise complies with the Federal Rules of Evidence.

Subsection (d) of 8 U.S.C. § 1324(d) was added to the statute in 1986. As its enactment did not repeal any provisions of the Federal Rules of Criminal Procedure or Federal Rules of Evidence, this provision must be read in conjunction with other rules governing the admission of deposition testimony in a criminal proceeding. Federal Rule of Criminal Procedure 15(e) provides that deposition testimony "so far as [it is] otherwise admissible under the rules of evidence, may be used if the witness is unavailable, as unavailability is defined in Rule 804(a) of the Federal Rules of Evidence." Federal Rule of Evidence 804(a)(5) defines unavailability as being "absent from the hearing and the proponent of [his] statement has been unable to procure [his] presence by process or other reasonable means." Unavailability must ordinarily also be established to satisfy the requirements of the Confrontation Clause, which generally does not allow admission of testimony where the defendant is unable to confront the witness at trial. Ohio v. Roberts, 448 U.S. 56 (1980). This rule is not absolute. The lengths to which the government must go to produce a witness to establish the witness's unavailability is a question of reasonableness and the government need not make efforts that would be futile. Id. At 74.

We reject Aguilar-Tamayo's contention that §1324(d) is

5

unconstitutional. We do not read the statute as eliminating the requirement that the government establish the unavailability of a witness before the witness's deposition testimony can be admitted at trial. The procedures established in that statute comport with constitutional confrontation rights. United States v. Santos-Pinon, 146 F.3d 734 (9th Cir. 1998). The question remaining is whether the action taken by the government to secure the presence of the witnesses who testified by video deposition was sufficient to establish their unavailability. The parties stipulated that the witnesses were deported to Mexico, that they were not subject to subpoena and that Mexico would not recognize their extradition on a material witness warrant. The government also established that a standing order issued by the district court in Del Rio is in place requiring the government to depose and deport illegal aliens so as to avoid lengthy detention of Mexican Nationals as material witnesses. The parties also stipulated that the government made no effort to secure the witnesses return to the United States for trial.

We are sympathetic to the plight of the government dealing with (1) the high volume of § 1324 prosecutions on the Mexican border; (2) a standing court order and statutory scheme encouraging or requiring the deportation of illegal aliens who are material witnesses in this type of case; and (3) the government of Mexico that will not honor material witness warrants. However, to

6

establish unavailability as predicate for the admission of depositions, Federal Rule of Evidence 804(a)(5) requires an attempt to secure the presence of a witness by "process or <u>other reasonable means</u>." (emphasis added).

In <u>United States v. Allie</u>, 978 F.2d 1401 (5th Cir. 1992), we decided a case presenting a similar issue. The aliens who were material witnesses had been deposed under 18 U.S.C. § 3144 which requires that "detained material witnesses be deposed 'within a reasonable period of time' if 'further detention is not necessary to prevent a failure of justice.'" <u>Id.</u> at 1404. Defendants argued that the district court erred in admitting the deposition. One of the objections lodged by defendants was that the government had not shown that the witnesses were unavailable. The government, however, had taken numerous steps to insure that the deported witnesses would return for trial including providing witness fees and travel cost reimbursements, giving the witnesses a subpoena and letter to facilitate their reentry into the U.S., calling them in Mexico, getting assurance from the U.S. that they would return, apprising border inspectors of their expected arrival and  issuing checks to be given to the witness upon their reentry into the U.S. at time of trial. Despite these efforts, the witnesses did not appear for the trial, but we held that the government employed reasonable measures to secure their presence and that their deposition testimony was admissible.

7

We do not suggest that it is necessary for the government to take all of the steps referenced in <u>Allie</u> to establish that it acted reasonably to secure a witness' presence. However, as stated above, the government stipulated that it took no steps to secure the presence of these witnesses. This can hardly constitute the use of "reasonable means" to secure the presence of the witnesses. The district court found that it would have been futile for the government to have taken steps to secure these witnesses' presence once they were deported. The 8th Circuit in <u>United States v. Perez-Sosa</u>, 164 F.3d 1082 (8th Cir. 1998), affirmed a similar finding by a trial court in an analogous case, although it is not clear what record the government made in that case of its earlier unsuccessful efforts to secure the deported witnesses for trial. In the absence of such a record, we have serious doubts that a finding of futility could be sustained.

### III.

But, we need not decide whether the admission of the deposition testimony was error, because we conclude that any error that may have occurred was harmless. Whether a violation of the Confrontation Clause is harmless in a particular case depends on a host of factors including

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the

8

prosecution's case.

Delaware v. Van Arsdall, 475 U.S. 673, 686-87, 106 S.Ct. 1431 (1986). The only serious fact issue presented at trial was whether appellant profited from assisting and leading illegal aliens into this country. In the statement he gave to the border patrol, appellant admitted charging the aliens for his services. The material witnesses confirmed their payment to Aguilar-Tamayo for his assistance in guiding them across the border. Aguilar-Tamayo repudiated the portions of his statement asserting that he was guiding the group of aliens and that they paid him for his services. But he faced the difficult task of persuading the jury to credit his testimony over the testimony of two Border Patrol agents who witnessed the statement. In addition, other testimony, independent of Aguilar-Tamayo's statement, corroborated the government's contention that Aguilar-Tamayo was leading the group of aliens. The border patrol agents who apprehended Aguilar-Tamayo and the other aliens observed the defendant leading the group, physically, by speech and by hand signals. He unlocked the gate that obstructed their path and warned the group that he had seen lights ahead and that border patrol had been in that area before. We also note that the defendant had the opportunity to cross-examine the witnesses in the deposition process. Accordingly, given the overall strength of the prosecution's case against the defendant any error in allowing the videotaped depositions to be

9

admitted at trial was harmless beyond a reasonable doubt.

IV.

For the foregoing reasons, Appellant Aguilar-Tamayo's conviction and sentence are AFFIRMED.